RICHARD PAUL, INC., a corporation of the State of California,
Appellant,

*vs.*

UNION IMPROVEMENT COMPANY, a corporation of the State of Delaware,
Appellee.

UNION IMPROVEMENT COMPANY, a corporation of the State of Delaware,
Appellant,

*vs.*

RICHARD PAUL, INC., a corporation of the State of California,
Appellee.

*Supreme Court, On Appeal, August 4, 1952.*

WOLCOTT and TUNNELL, Justices, and TERRY, Judge, sitting.

*W. T. Knowles*, of Knowles & Allmond, for appellant and cross-appellee.

*E. Ennalls Berl* and *James L. Latchum*, of Berl, Potter & Anderson, for appellee and cross-appellant.

WOLCOTT, Justice, delivering the opinion of the court:

This is an appeal from a final judgment in Chancery entered in a cause in which Richard Paul, Inc., a California corporation (hereinafter referred to as plaintiff), seeks to compel Union Improvement Company, a Delaware corporation (hereinafter referred to as defendant) to remove certain obstructions across an areaway or alley bounding two sides of a building leased by the plaintiff from the defendant. The cause proceeded to final hearing before the Vice-Chancellor who filed an opinion, 32 *Del.Ch.* 332, 86 *A.2d* 744 holding that the plaintiff possessed the right to use the alley and that the objected to obstructions should be removed. On March 14, 1952, the Vice-Chancellor entered an order on his opinion requiring the defendant to remove the obstructions, permitting the erection of a gate at one of the two entrances to the alley and requiring the plaintiff to keep that gate closed and locked at all times when it was not in use.

Thereafter, the defendant prayed for a modification of the order of March 14, 1952 on the ground that compliance with the requirements of the order imposed an undue hardship on it without resulting in any material benefit to the plaintiff. The defendant suggested an alternative means of ingress and egress for the

plaintiff through a parking lot owned by the defendant adjacent to the plaintiff's premises. Plaintiff objected to the proposed modification but, on April 23, 1952, the Vice-Chancellor entered a final judgment giving the plaintiff relief in the form suggested by the defendant.

From the final judgment both parties have appealed. The cross-appeals bring before us for review the cause in its entirety, not only as to the respective rights of the parties under the lease, but also as to the extent of relief, if any, to be given.

It is necessary to state the facts. The defendant is the owner of a four-story building located at the southeast corner of Ninth and Walnut Streets in Wilmington. Running along the southerly and easterly sides of the building, and forming a right angle at the southeastern corner of the building is a twenty-foot wide areaway, or alley, having exits with gates on both Walnut and Ninth Streets, and which until recently was enclosed by fences and row garages along its southern and eastern sides.

The defendant owns the contiguous land to the east and south of the premises leased to the plaintiff. In 1942 and until the events leading· to this litigation took place, the defendant's contiguous land to the south and east was occupied by a number of private garages.

The plaintiff is a manufacturer of an article of women's footwear called "Peds". In 1942, it entered into a lease with the defendant for the first and second floors and basement of the defendant's building as a factory for the manufacture of those articles. Twice since 1942, the plaintiff has entered into new leases for the same premises, the last one having been entered into on February 28, 1951 for a term expiring on November 30, 1952. All of the leases have contained the following provision:

"That the Lessor has rented to the said Lessee, and the Lessee has rented from the said Lessor, the basement and first and second floors of All that certain four-story building located on the southeast corner of Ninth and Walnut Streets, Wilmington, Delaware, together with an airway of approximately twenty (20) feet surrounding said building (reserving, however, for ingress and egress to the third and fourth floors the use of said airway, the necessary stairways, and the use of the elevator to the Lessor, its tenants, officers and agents), * * *."

Throughout the period the plaintiff has leased the premises from the defendant, a third party has been in possession of the third and fourth floors of the building under a lease entered into with the defendant. Such third party is permitted ingress and egress through the alley to a stairway and elevator which are entered over a loading platform built along the southern wall of the building. It will be noted, from the quoted provision of the plaintiff's lease, that the defendant expressly reserved this right for the use of the tenant of the third and fourth floors.

Throughout the term of its various leases the plaintiff shipped its product daily by parcel post, loading its shipments into its truck at the loading platform on the south side of the building. It used parts of the alley for parking purposes, and used both the Ninth and Walnut Street entrances. At its own expense the plaintiff did such repair and maintenance as was done to the alley throughout the term of the leases. The defendant knew of these facts.

Some time in November, 1951, the defendant, having decided to convert its property adjacent to the building and alley on the south and east to a parking lot, removed the fences and row garages along the south and east sides of the alley and covered the entire area, including the surface of the alley with macadam. The parking lot was enclosed by a high cyclone wire fence which extended across and closed the outlet of the alley into Ninth Street. The bed of the alley was separated from the rest of the parking lot on the east by a wooden parking rail. In addition, the defendant erected a fourteen foot wire gate at the southeastern corner of the building. This gate is erected parallel to Walnut Street and in the same line as the east wall of the building. It bars entrance to the defendant's parking lot and the easterly portion of the alley from that portion of the alley leading off Walnut Street.

The foregoing facts are the background of this action. The plaintiff seeks to compel the defendant to remove the obstructions to its unhampered use of the alley in question, which it says it is entitled to under the terms of its lease. The defendant argues that the plaintiff has at most a way of necessity in the southern half of

the alley and that, in any event, to compel it to remove the obstructions would impose an undue hardship upon it without resulting in any material benefit to the plaintiff.

It is to be observed that the language of the plaintiff's lease hereinbefore quoted contains a reference to the grant of an "airway" to the plaintiff and expressly reserves to the defendant the right of ingress and egress through that "airway". Defendant insists that the word "airway" must be interpreted literally and that it means that the plaintiff was granted only "a passage for a current of air". We think the particular provision of the lease contains within itself a sufficient answer to the problem of construction with which we are faced. It seems obvious that something more than an easement in light and air was intended to be granted to the plaintiff, for otherwise the reservation of a right of ingress and egress, which necessarily must be over the surface of the land as well as through the air, would not have been necessary. The defendant thought it necessary to reserve the right of ingress and egress which of itself is tacit agreement that the plaintiff could have prevented it from entering the premises through the so-called "airway". Since the reservation is of the right to pass across the surface of the land, and since it is a limitation upon the right granted to the plaintiff it seems clear to us that the parties to the lease believed that the plaintiff had been granted a lease of the alley itself and not merely a right to the unobstructed flow of light and air. Any other construction would be too artificial to be accepted. Obviously, the plaintiff was intended to have access to the premises leased by it. What more reasonable conclusion can be reached than that such access was to be had through the existing alley which by reason of existing barriers was made to appear as a part of the premises on which the building to be leased was erected?

It seems to be the general rule that the extent of a granted easement is to be determined by a true construction of the language by which it is created. In so construing the grant, surrounding facts and circumstances which throw light on what the intention of the parties must have been are of great aid in resolving the question. 17 *Am.Jur.*, *Easements*, § 97; 28 *C.J.S.*, *Easements*,

§ 26. In construing such grants, ambiguous or doubtful words will be construed in favor of the grantee. *Matteodo v. Capaldi*, 48 *R.I.* 312, 138 *A.* 38, 53 *A.L.R.* 550.

The existing facts at the time of the plaintiff's first lease in 1942, which also contained the language before us, and the subsequent actions of the parties confirm the conclusion that the above quoted provision of the lease was not intended by the parties as the grant of an easement in light and air only. In 1942, when the plaintiff first leased the premises the alley in question was in existence. It extended around two sides of the building. It was open at both ends, except for gates. There was an entrance to the building located in the southern half of the alley, and the alley was separated from other property to the east and south by barriers. The existence and extent of the alley in question was apparent from casual inspection. It also seems clear that in 1942 the sole possible use of the alley was in connection with the use of the building which was being leased by the plaintiff, since it was separated from the contiguous land by barriers. These circumstances, we think, make it clear that the alley in its entire length and breadth was an appurtenance of the leased premises. As such, it would have passed to the plaintiff by implication upon the leasing of the premises, even in the absence of an express grant. See *Annotation*, 34 *A.L.R.* 233. Necessarily, the same result must be reached when the lease grants an easement of some nature but in ambiguous and contradictory terms.

The conduct of the parties throughout the terms covered by the original and subsequent leases also confirms the fact that the right to the use of the entire alley had been granted to the plaintiff. Plaintiff used both the eastern and southern arms of the alley and both its exits. It made such repairs to the bed of the alley as were made. The defendant knew of this use and did not object to it. It is a familiar rule that when the nature and extent of a granted right is ambiguous or doubtful under the terms of the grant, the exercise of the right by its holder, acquiesced in by the grantor, establishes its extent. 2 *Thompson, Real Property*, § 564.

The foregoing is a sufficient answer to the defendant's conten-

tion that the plaintiff is entitled only to a way of necessity in the southern arm of the alley. We think the construction of the provision in the lease, the physical aspect of the leased premises, and the subsequent action of the parties refute the argument satisfactorily. One additional argument of the defendant, however, perhaps deserves mention. Defendant urges that the lease provision should be construed as a grant of an easement in light and air only because the plaintiff was probably particularly anxious to obtain such an easement because of the holding in *Lynch v. Hill*, 24 *Del.Ch.* 86, 6 *A.2d* 614, decided in 1939, establishing the rule in Delaware that easements in light and air may not be created by implication or prescription. The argument is not persuasive. It is refuted by the incompatible reservation in the supposed grant of an easement in light and air of the right of ingress and egress across the surface of the ground, and by the physical fact of the nature of the leased premises.

■ We think, therefore, that the Vice-Chancellor was correct in holding that the plaintiff under its lease has the right to the unobstructed use of the alley in its length and breadth in the manner and to the extent it had been using it since 1942. This holding of the Vice-Chancellor will be affirmed.

The plaintiff has appealed, however, from that part of the Vice-Chancellor's judgment awarding it relief in support of its right to the use of the alley. The plaintiff argues that the effect of the final judgment of the Vice-Chancellor is to force it to take something other than that to which it is entitled under its lease. The defendant argues that in the awarding of final relief a court of equity may always consider the relative hardships and advantages to the parties and frame its decree on the basis of them. It appears from the recital of the final judgment that the Vice-Chancellor did this for it is stated that the prescribed means of access for the plaintiff to Ninth Street "will result in less hardship to the defendant and will also be equally convenient to plaintiff".

■ There is little question but that equity in a proper case will enjoin the continued obstruction of an easement, and that the obstruction of an easement of itself is sufficient to show the irreparable nature of the injury and the inadequacy of the remedy

at law. 17 *Am.Jur.*, *Easements*, § 152; 28 *C.J.S.*, *Easements*, § 107(c). It is true that ordinarily, when questions of title in real estate are involved, equity will not act until the legal rights have been established in a court of law, *Green v. Cowgill*, 30 *Del.Ch.* 345, 61 *A.2d* 410, but in the case, *sub judice*, the plaintiff's rights are established by a construction of its lease. There are no disputed facts. The sole dispute as to the plaintiff's legal right arose over the proper construction of the lease and, consequently, the finding of a jury was neither required nor desirable to resolve the dispute. This case differs, therefore, from the usual case of title dispute depending for solution upon the drawing of a factual conclusion from a welter of conflicting items of evidence. We think the case presents a proper situation for equitable relief, viz., the unwarranted invasion of a legal right for which there is no adequate remedy at law.

The defendant contends that even if the right of the plaintiff to relief is conceded, it nevertheless should be given no relief beyond the extent necessary to give it an equally convenient alternative to its legal right, since to do otherwise would be to impose an undue hardship on the defendant without materially benefiting the plaintiff.

This phase of the appeal presents a troublesome question. Under its lease, the plaintiff has a right to the use of an alley entering into Ninth Street. The defendant has obstructed that alley permanently in violation of the plaintiff's established right. Nevertheless, the final judgment entered does not enforce the plaintiff's right as it has been established, but requires the plaintiff to accept a different means of access to Ninth Street. The Vice-Chancellor found that the alternate means of access would be as convenient to the plaintiff. We think there is in the record support for the finding as to convenience, but this does not dispose of the matter. We are faced with a fundamental question. We must determine to what extent the Court of Chancery may balance the equities, conveniences and hardships when awarding final relief to a plaintiff whose legal rights are clear.

It must be borne in mind that we are not concerned with an interlocutory application for injunctive relief to preserve the

*status quo* pending the final determination of litigation. As to such applications, the right of equity to exercise its discretion in either granting or denying the application in the light of the convenience of the parties and the hardship to either is clear. 4 *Pomeroy's Equity Jurisprudence*, (*5th Ed.*), § 1359a.

Strictly speaking, the grant of a final order for the removal of obstructions to an easement is an ordinary decree for an abatement and not in the proper sense a mandatory injunction. This phrase, in strict terminology, should be confined to preliminary or interlocutory injunctions. 4 *Pomeroy's Equity Jurisprudence*, (*5th Ed.*), § 1359. It is, therefore, confusing to accept the many statements in the authorities as to the right of a court of equity in its discretion to refuse applications for mandatory injunctions where to do so would cause greater hardship to the defendant than benefit to the plaintiff as having application to the award of final relief for the protection of established legal rights.

This is not to say, however, that in every case a plaintiff may depend and receive his pound of flesh. All plaintiffs seeking the aid of equity's extraordinary remedies do so subject to the maxim that he who seeks equity must do equity. This maxim is often invoked to dismiss the bill of a plaintiff who by his own actions has misled the defendant to his undoing, or who has stood silently aside and watched an innocent defendant dig his own pitfalls. The maxim lies in the heart of equity and means simply that irrespective of the nature of the remedy sought a plaintiff will not be given that which he seeks unless he is prepared to recognize and concede the rights of his adversary and accept them as a condition to the relief he seeks. 2 *Pomeroy's Equity Jurisprudence*, (*5th Ed.*), § 385.

A court of equity, however, may not utilize this maxim to rewrite the plaintiff's legal rights, or to prevent a plaintiff from asserting those legal rights in a court of law. The extent of the power of equity in this respect is simply that a plaintiff who refuses to concede his adversary's equities may be told that only upon the condition that he do so will he be given the relief he seeks, and that if he persists in his refusal his bill will be dismissed. 2

*Pomeroy's Equity Jurisprudence*, (5th Ed.), § 385; *Cityco Realty Co. v. Slaysman*, 160 *Md.* 357, 153 *A.* 278, 76 *A.L.R.* 296; *Comstock v. Thompson*, 286 *Pa.* 457, 133 *A.* 638; *Smith v. Rowland*, 243 *Pa.* 306, 90 *A.* 183; *Hunter v. Carroll*, 64 *N.H.* 572, 15 *A.* 17.

■ However, a plaintiff is required only to do "equity". No condition may ᶀe imposed which is arbitrary or not recognized by the rules of equity. Conditions may not be imposed to deprive a plaintiff of his full legal rights unless they secure an equitable right belonging to the defendant, or unless they secure to the defendant some matter which the plaintiff is estopped to deny him. 2 *Pomeroy's Equity Jurisprudence*, (5th Ed.), § 386; *Gaffney v. Kent, Tex.Civ.App.*, 74 *S.W.2d* 176; *Cityco Realty Co. v. Slaysman, supra; Smith v. Rowland, supra; Orsinie v. Torrance*, 96 *Conn.* 352, 113 *A.* 924; *Rowland v. New York Stable Manure Co.*, 88 *N.J.Eq.* 168, 101 *A.* 521.

The question, therefore, in the case before us, is whether or not there is some circumstance arising from the plaintiff's actions which a court of equity will recognize as having created an estoppel against the plaintiff, or as having created equitable rights in the defendant.

The facts pertinent to this phase of the case are that the plaintiff had bargained for and obtained the right to the use of an alley with exits on both Ninth and Walnut Streets. The defendant, the grantor of the right, removed the barriers along the alley and the gates at its exits without objection by the plaintiff. On Monday, November 19, 1951, the defendant's agents, however, commenced the erection of the obstructions complained of. This drew a protest from the plaintiff. The defendant rejected the protest and advised the plaintiff to obtain a court order to stop the erection. On Friday, November 26, 1951, the plaintiff filed this action.

■ We can find little in these recited facts to invoke sympathy for the defendant. To be sure, the defendant disputed the plaintiff's rights under its lease, but it had fair warning of the plaintiff's claim. Under this circumstance, we think the defendant's continued violation of the plaintiff's claimed right was action

taken at its peril. Nor do we think that the delay of five days in instituting suit can have misled the defendant to its subsequent disadvantage. For all that the record indicates the obstructions would have been completed before the institution of suit and an application for a restraining order could have been accomplished by the plaintiff. We think the Vice-Chancellor found as a fact that the plaintiff is not subject to the charge of delay. His finding in this respect is supported by the record.

 The result, therefore, is that a clear violation of plaintiff's rights under the lease has been established, without the establishment of any counter-balancing equities in the defendant's favor. Under such circumstances, the course of a court of equity is clear—it must follow the law and protect the plaintiff's legal rights. 2 *Pomeroy's Equity Jurisprudence*, (*5th Ed.*), § 425. The plaintiff is entitled to a judgment requiring the removal of the obstructions. However, since the plaintiff made no objection to the removal of the barriers that formerly ran along the easterly and southerly sides of the alley, and since the evidence clearly discloses that the plaintiff habitually left the gates at the exits of the alley open at all times, we think that the defendant should not be required to replace them. To require that of the defendant would unduly add to its expense without resulting in any benefit to the plaintiff.

The cause will be remanded with instructions to the Vice-Chancellor to vacate the final judgment of April 23, 1952, and to enter a final judgment that the defendant shall abate the obstructions to the alley.