WALTER S. WOODS and MARJORIE H. WOODS, his wife,
Plaintiffs,

*vs.*

JOHN MACIEY, JR., and J. JUDITH MACIEY, his wife,
Defendants.

*New Castle—January 14, 1959.*

*On Motion for Reargument—February 24, 1959.*

*Charles F. Daley, Jr.,* Wilmington, for plaintiffs.

*Edwood F. Melson, Jr.,* Wilmington, for defendants.

MARVEL, Vice Chancellor: In July 1957, plaintiffs purchased from a Mr. and Mrs. Joseph Miller lot 8 in a land subdivision situate in Brandywine Hundred known as Forest Hills Park, an area acquired by the developer, Charles P. Weldin, in 1939. Defendants are the owners of lot 9 in the same development, their lot lying to the west of plaintiffs and across an area at one time reserved by the developer for a proposed street extension, said street extension being the subject of the dispute here at issue. Defendants acquired their lot in March 1951.

The formal plot of Forest Hills Park, a copy of which has been filed in this proceeding, sets forth the established road system pertaining to the so-called recorded section of the development. It does not contain a marking off of the lots here involved or of the proposed street extension between them. Such proposed extension does appear on a 1948 unrecorded plot [1] hereinafter referred to, however, such latter plot not having been approved and recorded, there was accordingly no formal dedication of the proposed street extension in question.

The deed to the Millers, which is dated December 23, 1952, had conveyed lot 8: "Together with the free and uninterrupted right, use and privilege of the above mentioned and described fifty feet wide extension of Gunning Bedford Boulevard in common with others entitled thereto forever * * *", language which is repeated in the Miller deed to the plaintiffs, however, it is apparent from the language in all the various deeds before me that the 50 feet wide strip in question was reserved in contemplation of the possible building of a southerly

1. Revised, November 6, 1950.

extension of Gunning Bedford Drive or Boulevard along a line between lots 8 and 9, on through a development known as Beechwold to Weldin Road, such proposed extension having been so indicated on the August 1948 map which was never approved for recording. By reason of the provisions of § 2510 of *Title 9 Del.C.* the plot for such road extension would have had to have been approved by the New Castle County Regional Planning Commission and the Levy Court prior to being recorded, and as noted the 1948 plot submitted by the parties contains no such approval. Furthermore, the record is silent on the matter of access through Beechwold to Weldin Road, a right of way which would have had to have been acquired for the proposed street to have achieved its avowed purpose.

The defendants, having acquired lot 9 in Forest Hills Park on March 15, 1951, in October 1957 purchased from Charles P. Weldin, the developer of the subdivision in question, the area originally reserved for the proposed 50 feet wide extension of Gunning Bedford Boulevard, their deed stating: "This deed grants and conveys to the said parties of the second part all the right, title and interest of the said party of the first in and to a proposed fifty feet wide street or driveway, proposed as a possible extension of Gunning Bedford Boulevard southerly to connect with a possible establishment of a road through Beechwold to connect with Weldin Road. *Subject* to any right or interest which said party of the first part hereto may have granted or conveyed to the owner of any lot in Forest Hills Park in said proposed street or highway as an extension of Gunning Bedford Boulevard."

Thereafter, defendants put up a fence along the westerly side of the strip of land which they had purportedly purchased, and plaintiffs, having removed such fence, sue to enjoin further interference by defendants with what plaintiffs conceive to be their rights in the area in question.

Both plaintiffs and defendants have moved for summary judgment. Plaintiffs contend that defendants should be permanently enjoined from interfering in any way with plaintiffs' claimed right to

"the free and uninterrupted right, use and prvilege of * * *" the 50 feet wide strip referred to in their deed, while defendants ask that the complaint be dismissed on the grounds that plaintiffs' rights, if any, are in a street which has not as yet been established.

The issue to be decided accordingly is whether plaintiffs have any rights in the 50 feet wide strip in question apart from a right to use a street which has not yet been built, a future event which is, to say the least, clouded in some doubt in view of the action of the developer, Weldin, in conveying the area in question to the defendants.

While it would seem to be quite obvious that the grantor of an easement of passage over a designated area may not unilaterally revoke it, quite a different situation is presented, in my opinion, when such a grant is of rights in a street which has not yet been built. The extent of an easement is to be determined by construction of the language by which it was created, and in construing such a grant surrounding facts and circumstances which throw light on the intention of the parties are of great aid to a court, *Richard Paul, Inc., v. Union Improvement Co.,* 33 *Del.Ch.* 113, 91 *A.2d* 49.

The deed to plaintiffs (and that of their predecessors in title) in the description of the land to be conveyed refers to a beginning point marked in part by the "westerly side of a fifty feet wide reservation for a proposed extension of Gunning Bedford Boulevard to Weldin Road * * *" and grants "* * * the free and interrupted right, use and privilege of the above mentioned and described fifty feet wide extension of Gunning Bedford Boulevard in common with others entitled thereto forever * * *." Furthermore, as noted above, a reading of the other deeds here involved indicates that the reservation made by the developer, Weldin, was for the primary purpose of extending Gunning Bedford Boulevard and not for the purpose of providing a private right of way to the owners of abutting properties. In fact, defendants' deed to lot 9 makes no mention of an easement as such and it is apparent from a reading of their two deeds and an examination of the 1948 plot that the area reserved for the proposed street extension was substantially cut out of lot 9. In other words the hope held out by the developer to interested lot owners, including plaintiffs, and to the public was that of the possibility of a public street through

to Weldin Road and no more. No grant as such was made of a private right of passage through an undeveloped area, and I can find no basis under Delaware law and the facts now before me for holding defendants estopped to deny the existence of a public as opposed to a private street. Compare *Annotation in* 14 *L.R.A.,N.S.,* 978.

While it may well be that Weldin, the developer, gave actionable assurances to plaintiffs or to their predecessors concerning his intentions as to the construction and dedication of a street extension, I am satisfied that plaintiffs are not entitled to have defendants permanently enjoined from enjoyment of land in which they have acquired the developer's title, no public street having been built thereon as proposed by the developer some ten years ago. Plaintiffs' rights, if any, in the area are in a street extension, which has been neither built, statutorily dedicated, nor impliedly dedicated through user, *Attorney General v. Chalfant,* 12 *Del.Ch.* 214, 110 *A.* 663. There being no street either in existence or dedicated, plaintiffs would appear to have no actionable rights in the area originally set apart for building such street, however, final judgment of dismissal will not be entered unless satisfactory evidence is introduced establishing that the extending of Gunning Bedford Boulevard is no longer feasible, if such be the case. Otherwise, an order will be framed on notice designed to protect plaintiffs' rights in such street, if and when built, thereby granting plaintiffs partial summary judgment.

## On Reargument.

While, as I noted in my original opinion herein, the 1952 deed of the developer, Weldin, did not grant a private right of way as such to plaintiffs' predecessors in title, I have reached the conclusion after reargument that under situations factually similar to that found here that the grantee of rights in a proposed or planned public street is generally deemed to have acquired a private easement over the area designated for public use pending the actual creation of the contemplated public right of way, *Thompson on Real Property,* (Perm. Ed.) Vol. 2, §§ 480 and 494. The principles on which such rulings are based are those of implied grant, implied covenant or estoppel. Compare cases in *Annotation in 7 A.L.R.2d* 607, at page 628 *et seq.*

 The terms of a grant are to be construed so as to carry out the intention of the parties and any ambiguity in its terms must be construed in favor of the grantee, *Richard Paul, Inc., v. Union Improvement Co.*, 33 *Del.Ch.* 113, 91 *A.2d* 49. Here, the grantor must be deemed to have intended to grant rights of access through a designated area irrespective of when an actual public road should be built, or is estopped to deny access by his grantee's successor in title to an area over which he represented a road would be built. Compare *Fleming v. Glaeser, Del.Ch.C.A.* 342 (unreported).

That the grantor was aware of his commitments to plaintiffs' predecessor in title in reference to the designated area is borne out by the fact that the conveyance to defendants of title to the reserved area was made subject "* * * to any right or interest which said party of the first part (Weldin) may have granted or conveyed to the owner of any lot in Forest Hills Park in said proposed street or highway as an extention of Gunning Bedford Boulevard", and significantly the 1957 deed to defendants conveying the fee subject to such rights discloses no substantial [1] payment for the grant, there being no revenue stamps affixed.

Summary judgment will be entered for plaintiffs enjoining defendants from interfering with plaintiffs' free and uninterrupted right, use and privilege of the 50 feet wide extension of Gunning Bedford Boulevard as described in defendants' deed, in common with other entitled thereto forever.

Order on notice.

---

1. A $10 consideration is recited.