PHILIP J. LEVIN,
Plaintiff, .

*vs.*

METRO-GOLDWYN-MAYER, INC., a Delaware Corporation,
Defendant.

*New Castle, June 14, 1966.*

170

*S. Samuel Arsht,* of Morris, Nichols, Arsht & Tunnell, Wilmington, and *Murray Gurfein,* of Goldstein, Judd & Gurfein, New York City, for plaintiff.

*David F. Anderson,* of Berl, Potter & Anderson, Wilmington, and *Louis Nizer,* of Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant.

MARVEL, Vice Chancellor: Plaintiff, who is a director of the defendant Metro-Goldwyn-Mayer, Inc., claims to be the record holder of 112,510 shares of such corporation. Furthermore, according to his complaint, he and his wife own directly or indirectly a total of approximately 10% of defendant's currently issued and outstanding common stock. He seeks a restraining order against the filing with the Secretary of State of Delaware of a charter amendment effected by the corporate defendant under the provisions of *Title* 8 *Del.C.* § 242, the issuance of stock authorized thereunder, and the removal from the custody of judges of election of the records of the stockholders' meeting of May 24, 1966, at which such corporate amendment was apparently approved.

Plaintiff, along with one other director of Metro-Goldwyn-Mayer, voted against the directors' resolution, and, with his wife, presumably voted against stockholder approval of management's resolution. He contends that he and other stockholders of Metro-Goldwyn-Mayer,

Inc. would be irreparably injured if defendant is permitted to effectuate the filing of the corporate amendment under attack although the exact nature of such claimed injury is not alleged. In fact, it is not clear how plaintiff is presently threatened with immediate and irreparable injury.

Plaintiff brought on for argument his motion for such restraining order on June 3. However, it was agreed by stipulation that defendant would refrain from filing the contested corporate amendment until after the Court has entered an order following full argument on plaintiff's motion. Such argument has now taken place.

On April 15, 1966, the directors of Metro-Goldwyn-Mayer, acting under the provisions of *Title* 8 *Del.C.* § 242(a)(3) as well as (d)(1) of such section, proposed an amendment to defendant's certificate of incorporation which provided that defendant's outstanding common stock of three million shares would be split two-for-one and its total authorized common stock increased from three million to eight million shares. Section 242 provides that a charter amendment may be effected by the adoption by the directors of a resolution setting forth the corporate amendment proposed, declaring its advisability, and either calling a special meeting of stockholders to vote on it, or directing that the proposed amendment be considered at the next annual meeting of the stockholders. The reserved power to amend a corporate charter is, of course, firmly established, *Delaware R. Co. v. Tharp*, 1 *Houst.* 149, *Davis v. Louisville Gas & Electric Co.*, 16 *Del.Ch.* 157, 142 *A.* 654, and *Title* 8 *Del.C.* § 364.

In the case at bar, a special stockholders' meeting was called to consider management's resolution, and it is the apparent approval of such proposed amendment by the required majority of the defendant's 2,521,429 shares outstanding which plaintiff attacks. According to the statutory certificate of the judges of election, 1,294,809 shares were voted in favor of the proposed corporate amendment and 860,450 shares against it. 366,170 shares were not voted. The judges of election, selected by stipulation of the parties, were Kenneth F. McClaren, a vice president of Corporation Trust Company, and George F. Carse, an assistant vice president of Bankers Trust Company of New York.

It is charged in plaintiff's original as well as his amended and supplemental complaints that notwithstanding the tabulated vote in favor of the corporate amendment proposed, the conduct of the special stockholders' meeting of May 24, 1966, as well as the counting of the vote there taken were such as to nullify the apparent passage of such amendment by a majority stockholders' vote as required by the Delaware statute. The results of the vote followed a bitterly contested fight for proxies accompanied by companion litigation in New York over the matter and form of proposals sought to be put to defendant's stockholders by its board and by plaintiff. And the forms of proxies and other material appearing in the record to date satisfy me that apart from any question of false or misleading information furnished to stockholders by either of the present litigants, the average stockholder desirous of a stock split could well have been confused as to the nature of the precise issue before him.

Plaintiff charges specifically in his amended and supplemental complaint, filed after it appeared that management's proposal had carried by 34,095 votes, that some one thousand persons present at the May 24 stockholders' meeting were illegally and erroneously influenced into voting for management's proposed charter amendment by an improper ruling of the chairman of the meeting that plaintiff's proposal that the stockholders recommend to defendant's directors the adoption of a resolution proposing a two-for-one split but limiting the necessary concomitant increase of authorized stock to six million shares, the number of shares needed for such split, was out of order.

Plaintiff also charges that the judges of election counted as validly voted in favor of management's proposal, shares in excess of 165,000, notwithstanding plaintiff's challenges of the management proxies submitted for such shares and that the chairman of the meeting ignored plaintiff's exception to or challenge of the accuracy of the judges' report and their certificate that management's proposal had been carried. He also complains that proxies were marked by certain stockholders both for management's resolution and the Levin proposal, thereby indicating approval of the two-for-one split and the increase in capital needed for such split but expressing an intention to vote against the authorization of the additional two million shares as proposed by the directors.

Plaintiff's original complaint made particular point concerning alleged improper counting for management of a proxy of Baldwin

Securities Corporation representing 100,000 shares of Metro-Goldwyn-Mayer, a document on which such corporate name was stamped. Under such corporate name appears the name Philip Roth without any indication of such person's office or authority to execute the proxy. Plaintiff contends, *inter alia,* that a so-called certificate of ratification of Mr. Roth's authority to execute such proxy as vice president of Baldwin was not submitted to the judges until after the closing of the polls. Finally, it is alleged in the original complaint that since May 4, 1966 is the record date for the special stockholders' meeting of May 24, the vote at the meeting "* * * must, perforce, include the stock of persons who are no longer beneficial owners of stock of MGM."

Section 242(*d*)(1) provides that at a stockholder vote on a corporate amendment, "* * * The judges shall decide upon the qualifications of voters, and accept their votes, and when the vote is completed, count and ascertain the number of shares voted respectively for and against the amendment, and shall declare whether the persons or bodies corporate holding the majority of the voting stock of the corporation * * * have voted for or against the proposed amendment * * *".

Plaintiff draws an analogy between the present suit and one under *Title* 8 *Del.C.* § 225, a statute which specifically confers jurisdiction on this Court to determine the validity of any election of any director or officer of a Delaware corporation and the right of any person to hold such office. And there is no doubt but that the law concerning the counting of votes at a stockholders' meeting has been developed primarily in election cases. The statute involved is express and explicit, it being noted in *Fleer v. Frank H. Fleer Corporation,* 14 *Del.Ch.* 277, 125 *A.* 411, that absent such a statute a court of equity will not ordinarily take jurisdiction of an election contest. Significantly, reviews of election, while ordinarily given precedence in Chancery litigation, by their very nature take place after those directors whose title is contested have taken office. Until their election is confirmed or they are ordered removed from office, they continue as *de facto* officers. Accordingly, injunctive relief is normally not a factor. But see *Empire Southern Gas Co. v. Gray,* 29 *Del.Ch.* 95, 46 *A.2d* 741.

174

In other corporate acts requiring stockholder approval, such as mergers and sales of assets, while an injunction may, of course, issue in a proper case, a heavy burden rests on a plaintiff who seeks to enjoin the consummation of corporate proposals as to which the statutory formalities have been observed. See *Bruce v. E. L. Bruce Co.*, 40 *Del.Ch.* 80, 174 *A.2d* 29, and *Heilbrun v. Sun Chemical Corporation*, 38 *Del.Ch.* 321, 150 *A.2d* 755. In *Schott v. Climax Molybdenum Company*, 38 *Del.Ch.* 450, 154 *A.2d* 221, however, the present Chancellor in a suit to have an accomplished merger declared null and void on the grounds that it had not received the required statutory approval of two-thirds of the stock of the merging corporation, examined the vote taken at the statutory stockholders' meeting. On the basis of his review of the proxies attacked by plaintiffs he denied their motion for a summary judgment that the merger under attack was null and void for failure of its proponents to obtain the required two-thirds vote of the stock of plaintiffs' corporation.

Turning to the principles to be applied in determining whether or not a necessary statutory stockholder vote has been in fact obtained, it appears that the Delaware cases concerned with stockholder voting have consistently looked to substance rather than to form. These precedents and many others are discussed and criticized in 1 *Hornstein, Corporation Law and Practice*, § 305 *et seq.* and will not be reviewed in detail here. For instance, in the case of *Gow v. Consolidated Coppermines Corp.*, 19 *Del.Ch.* 172, 165 *A.* 136, the Chancellor refused to bar the counting of a proxy signed in longhand in the partnership name of a registered owner. The Court noted that the question was simply whether the partnership had authorized the person named in the proxy to act for it in the matter of voting its stock and that to require the formalities called for in the execution of the most solemn type of formal instrument to be observed in the execution of proxies for corporate elections would sacrifice practicality to mere form. In the same case the Court approved the voting of what may well have been corporate proxies on the basis that signatures to the proxies corresponded to the names of the registered holders.

Plaintiff, conscious no doubt of his inability to prove at this juncture that any substantial number of shares were voted contrary to the wishes of the registered holders, protests with particularity the voting of 100,000 shares of Metro-Goldwyn-Mayer registered in

the name of a small investment company known as Baldwin Securities Corporation on the basis of a proxy signed by one Philip Roth, who, plaintiff claims, had no authority to execute such proxy. Plaintiff, putting form above substance, attacks the action of Baldwin's executive committee of two on which Mr. Roth's original act was based, citing excerpts of 1954 corporate by-laws which refer to an executive committee of five. The annual report of the company for 1965 discloses, however, that the entire Baldwin board, as of December 31, 1965, consisted of five persons and the executive committee of three persons.[1] One of these, Mr. Hopkinson, died in February, 1966, and his offices on both the board of directors and on the executive committee have not been filled. I have no doubt but that on May 5, 1966, Mr. Guilden, Baldwin's president, and Mr. Roth, its vice-president and treasurer, representing a quorum and majority of the executive committee of Baldwin, authorized the execution of the Roth proxy. Mr. Hopkinson had, as noted above, recently died, and the regular meeting of the entire board scheduled for April 28, had not been held. Furthermore, the board resolution of May 20 and the affidavits of the individual directors clearly establish the intent of such persons, who own approximately 44% of Baldwin's stock, to vote its Metro-Goldwyn-Mayer stock in favor of management's resolution. Baldwin's shares were properly voted for management's proposal.

Plaintiff's other contentions about alleged post-dating of management proxies and the judges' failure to require the production of envelopes in which proxies were received disregard for the most part the presumption that a proxy appearing to be *prima facie* authentic should normally be accepted, *Gow v. Consolidated Coppermines Corp.*, 19 *Del.Ch.* 172, 165 *A.* 136, and *Atterbury v. Consolidated Copper Mines Corp.*, 26 *Del.Ch.* 1, 20 *A.2d* 743. Insofar as plaintiff complains about the judges' refusal to produce envelopes in which management's proxies were mailed, the Court is not persuaded, on the basis of the present record, that the rule of *Investment Associates v. Standard Power & Light Corp.*, 29 *Del.Ch.* 225, 48 *A.2d* 501, was disregarded to any substantial degree. On the contrary, the full transcript of proceedings before the judges of election on the evening of June 1, 1966, at which Mr. Morton Moskin, independent attorney for the judges, set forth the principles to be followed in tabulating the

---

1. See also Baldwin's amended by-laws as of February 16, 1956, attached to Arsht affidavit, fixing an executive committee of three.

vote, indicates that the Delaware precedents governing the voting of proxies were observed in the case at bar. See 1 *Hornstein on Corporation Law and Practice,* § 305 *et seq., supra.* The instructions given to plaintiff's representatives at the count, and contained in an affidavit of Milton M. Rulnick, namely, "* * * to challenge every proxy produced by Management which appeared to be later in date than a Levin proxy unless the envelope corresponding to the Management proxy were produced * * *" would have, if countenanced by the judges, been violative of the principles governing the conduct of corporate voting. Normally, envelopes are guides when two conflicting proxies bear the same date, or where proxies are undated. Compare *Investment Associates v. Standard Power & Light Corp., supra,* and *Shott v. Climax Molybdenum, supra.* Furthermore, the estimates made by plaintiff as to the number of allegedly revoked management proxies improperly voted are entirely conjectural, no specific facts as to numbers being submitted to support the charges made. He is clearly wrong as to his understanding of the Delaware law concerning voting by executors, administrators, partners, registered holders, the presumptions recognized in this Court at a count, and a State policy that stockholders should not be disenfranchised unless their purported vote is meaningless. See 1 *Hornstein, Corporate Law and Practice,* § 305 *et seq., supra.*

◼ Finally, plaintiff's contention that the ruling of the judges that plaintiff's proposal to recommend to defendant's board that the increase in defendant's authorized stock only to the amount needed for a stock split was out of order, improperly influenced stockholders is groundless. In the first place, the stockholders had been notified in plaintiff's proxy statement of May 10 that "* * * in an effort to give stockholders a fair opportunity to make their wishes known * * *" such proposal would be presented to the meeting "* * * in the event that Management's proposal is defeated * * *". Management's resolution having been approved, plaintiff's proposal became moot, assuming but not deciding that "* * * the nature of the business to be considered at such meeting * * *", which was called as required by the statute[2] specifically for a vote on management's proposed corporate amendment, could possibly encompass plaintiff's advisory proposal.

---

2. "The notice (of meeting of stockholders) shall set forth such amendment in full or a brief summary of the changes to be effected thereby, as the directors shall deem advisable." 8 *Del.C.* § 242(*d*) (1).

A restraining order may be entered in a proper case to preserve the status quo and to prevent "* * * immediate and irreparable injury, loss or damage." However, such a drastic order should not be granted unless earned both on the basis of the facts and the applicable law. In other words, such an order does not issue merely because it will do no harm, and where defendant will be harmed by such an order the equities must be balanced. When plaintiff prevails, an adequate bond must be posted "* * * for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained * * *". In determining whether or not there is any probability of ultimate success, the Court must consider not only the law to be applied but the facts of record, *Allied Chemical & Dye Corporation v. Steel & Tube Co.*, 14 *Del.Ch.* 117, 122 *A.* 142. Furthermore, in balancing the equities, the Court must weigh the hardship which will result to a defendant on the granting of a restraining order as against the benefit to plaintiff, 4 *Pomeroy's Equity Jurisprudence* (5th Ed.) § 1359(a), and *Richard Paul, Inc. v. Union Improvement Co.*, 33 *Del.Ch.* 113, 91 *A.2d* 49. Here the injury which would result to defendant as a result of restraining the carrying out of a duly adopted corporate policy with ensuing stockholder bewilderment as well as possible monetary loss on their part would be far more damaging to the party restrained than would result from a refusal to grant what plaintiff seeks. Plaintiff, as noted above, can point to no immediate threat of irreparable and immediate injury, and it is conceded that he is scheduled to remain a member of defendant's board until the next annual meeting in February, 1967.

In conclusion, I think it should be noted that although "* * * A proposed (charter) amendment must in any case conform to the procedure and requirements of the statute * * *", *Sellers v. Joseph Bancroft & Sons Co.*, 23 *Del.Ch.* 13, 2 *A.2d* 108, no charge is made by plaintiff that the amendment here under attack is in itself violative of Delaware law as was the case in *Triplex Shoe Co. v. Rice & Hutchens*, 17 *Del.Ch.* 356, 152 *A.* 342. In the cited case, the Supreme Court of Delaware, distinguishing between the purported ratification of a void act as opposed to a voidable corporate act, declared that an attempted amendment designed to validate illegally issued stock of a Delaware corporation was ineffective, noting that where there is an inherent lack of power in a corporation to issue stock, neither the

corporation nor the person to whom such stock is issued is estopped to question its validity. In the case at bar, on the other hand, I am satisfied that it was the intention of the overwhelming majority of defendant's stockholders that management be authorized to file a certificate of amendment increasing the number of authorized shares to an amount sufficient to enable a two-for-one stock split to be accomplished and that plaintiff's attack, if ultimately successful, does not mean that the portion of the corporate act here under attack of which plaintiff approves is not susceptible of being cured *pro tanto*. I conclude for the reasons given above, particularly the failure to establish a threat of immediate and irreparable injury, loss or damage, that plaintiff has not established his right to a restraining order.

On notice, an order may be presented denying plaintiff's prayers for temporary injunctive relief. Such order shall also provide, however, that all records of the Metro-Goldwyn-Mayer stockholders' meeting of May 24, 1966, shall remain in the custody of the judges of election until further order of the Court.