**REVIEW 71, a partnership, et al., Plaintiffs-Appellants,**

**v.**

**ALLOYS UNLIMITED, INC., a New York corporation, et al., Defendants-Appellees.**

**No. 633-70.**

United States Court of Appeals, Tenth Circuit.

Nov. 1, 1971.

Parker M. Nielson, Salt Lake City, Utah, for plaintiffs-appellants.

Daniel L. Berman, Salt Lake City, Utah (Dennis McCarthy and Ricardo B. Ferrari, Salt Lake City, Utah, on the brief), for defendants-appellees.

Before PHILLIPS, SETH and Mc-WILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Review 71, a partnership composed of nine law review students at the College of Law of the University of Utah, brought an action based on Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and Rule 10b–5 of the Securities Exchange Commission (17 C.F.R. § 240.10b–5) against Alloys Unlimited, Inc., a New York corporation, and its officers and directors. The gist of the complaint, as we understand it, is that as the result of fraudulent and deceptive conduct on the part of Alloys and its directors in instituting a key employees stock bonus plan, Review 71 and other similarly situated shareholders of Alloys sustained damages in the sum of $1,500,000. In response to the complaint the defendants filed a motion to dismiss in which it was alleged, among other things, that the complaint failed to state a claim. In aid of the motion to dismiss, affidavits of the president and assistant secretary of Alloys were filed, with Review 71 responding thereto with an affidavit of one of its partners. It was at this stage of the proceedings that

the trial court, after argument, granted the motion to dismiss and entered judgment dismissing the action, refusing to allow Review 71 to file an amended complaint. Review 71 now seeks reversal of the judgment thus entered.

The complaint filed by Review 71 contained two causes of action, the first of which was a class action brought by Review 71 on behalf of itself and all other similarly situated shareholders against Alloys and five of its officers and directors. A brokerage partnership known as "C. E. Unterberg, Towbin Company" and the law partnership of "Peirez, Karmiol, Rosenthal & Ackerman" were not named defendants insofar as the first cause of action was concerned. However, the brokerage partnership and the law partnership were the defendants, and the only defendants, in a second cause of action, which was dismissed on motion along with the dismissal of the first cause of action. Review 71 does not appeal the dismissal of its second cause of action and accordingly a motion to correct pleadings has been filed seeking to delete from the title caption in this court the names "C. E. Unterberg, Towbin Company, a partnership," and "Peirez, Karmiol, Rosenthal & Ackerman, a partnership." On oral argument counsel for Review 71 stated that he had no objection to the granting of such motion. The motion is herewith granted, and the names of the two partnerships above referred to have been deleted as defendants-appellees in the instant proceeding.

Review 71 purchased 50 shares of common stock in Alloys in October and November 1969. As indicated, the first cause of action, hereinafter simply referred to as the complaint, related generally to the inauguration by Alloys of a key employees stock bonus plan, which will hereinafter be referred to as the Plan. The avowed purpose of the Plan was to provide an incentive for employees of Alloys and its subsidiaries to remain with the company. From the complaint we learn that in June 1969 the directors of Alloys tentatively adopted and placed the Plan into effect, with the proviso that the Plan would be "null and void" with any and all stock acquired thereunder to be repurchased by Alloys if the shareholders failed to approve the Plan. The Plan, a copy of which was attached to the complaint, provided for the issuance of stock to certain key employees at par value (10¢ per share) with the requirement that any recipient of stock whose employment by Alloys was terminated for any reason other than death or disability within one year of the issuance of such stock to him would be required to surrender all of the stock for return of his payment; an employee who terminated within two years of issuance would be required to surrender 80% of such stock at par, with each successive year of continued employment entitling the employee to retain an additional 20% of his stock, to the end that for an employee to retain all of the stock thus issued him he would have to remain with the company for five years after its issuance. The Plan further provided that the key employees to receive bonus stock would be selected by a committee of directors, none of whom would be eligible for participation. This Plan was placed into immediate effect and some 18,500 shares were issued key employees at par value.

In December 1969, Review 71 received notice of the annual meeting of the shareholders to be held January 7, 1970, and this notice informed the shareholders that the aforesaid Plan would be considered and voted upon at the annual meeting. In connection therewith, the management of Alloys solicited proxies for use at the annual meeting. Review 71 declined to grant such proxy and presumably thereafter voted against the Plan. From the complaint itself, we do not know whether the Plan was approved or disapproved by the shareholders at the annual meeting. However, from other parts of the record before us we do learn that the shareholders "overwhelmingly approved" the Plan at the shareholders' meeting held on January 7, 1970. It was in this general setting

that Review 71 instituted the present proceeding in April 1970.

The trial court did not state its reason for dismissing the complaint, though in colloquy with counsel it was indicated that the complaint did not state a claim upon which relief could be granted and, alternatively, that Review 71 had no standing to bring a class action of this type. Our analysis of the complaint convinces us that the complaint does not state a claim.

As indicated, the action was brought under Rule 10b–5, which generally makes it unlawful to employ schemes and artifices to defraud, to make untrue statements of material facts or to omit to state material facts, or to engage in acts which operate as a fraud or deceit in connection with the purchase or sale of any security. Paragraph 16 of the complaint is couched in the exact language of the aforesaid rule and then in a series of subparagraphs purports to spell out specifically the misconduct relied on. For the reasons set forth below, we do not regard the allegations to be sufficient to state a claim under Rule 10b–5.

Before examining the various allegations of misconduct set forth in paragraph 16 of the complaint, it should be emphasized that though the Plan was placed into effect in June 1969, the Plan itself provided that if the shareholders did not thereafter approve it, then "its provisions shall be null and void and all shares previously issued under it shall be repurchased by the Company at 10¢ per share." In view of this ratification requirement, we do not deem the institution of the Plan by the directors in June 1969 to be at the heart of this controversy. We thus conclude because if the shareholders had *disapproved* the Plan on January 7, 1970, then all stock theretofore issued would be subject to repurchase by Alloys at the price for which it had been previously issued, i. e., 10¢ per share. In such circumstance Review 71 would then have suffered no dilution of its equity or voting interest in Alloys

and would presumably have been satisfied. Hence, we deem the action taken at the shareholders' meeting on January 7, 1970, in connection with the Plan to be of something more than passing interest. However, as above noted, the complaint does not state whether the shareholders ratified or rejected the Plan, though from other parts of the record it would clearly appear that the Plan was in fact ratified by a majority of the stockholders. The fact that this Plan received stockholder ratification is deemed to be significant. Kaufman v. Shoenberg, 33 Del.Ch. 211, 91 A.2d 786.

Proceeding then to a consideration of allegations contained in paragraph 16, it is asserted therein that the defendants, i. e., Alloys and its directors, failed to furnish Review 71 and the other members of the class with accurate and explicit financial information concerning the operations of Alloys and its subsidiaries so as to permit a determination of "the essential fairness of the Key Employees Stock Bonus Plan." These particular allegations suggest that because of defendants' actions the shareholders did not have sufficient information to enable them to intelligently vote either for or against the Plan at the shareholders' meeting. However, in this regard, it is noteworthy that there is no follow-up allegation to the effect that because of this lack of information a majority of the shareholders were somehow deceived into ratifying a plan which they otherwise might have disapproved. Rule 10b–5 requires that in order for an alleged misstatement or omission to be actionable it must relate to a *material* fact and in our view the aforesaid allegations, standing alone as they are, do not under such circumstance meet the requirement of materiality.

It is also alleged in paragraph 16 that the defendants permitted issuance of the stock pursuant to the various provisions of the Plan and in so doing diluted the equity and voting strength of Review 71. As above noted,

though the defendants may have initially instituted and placed the Plan into effect, the shareholders by their vote permitted the Plan to be continued in effect, and any dilution of Review 71's interest in Alloys actually stemmed from the ratification of the Plan by the shareholders. A stock bonus plan for a company's employees is not fraudulent, per se, and the mere allegation that the adoption of the Plan resulted in a dilution of Review 71's interest in Alloys falls short of setting forth a claim under Rule 10b–5. Assuming, as it is suggested, that such allegation somehow equates to corporate mismanagement and waste, we note that Rule 10b–5 is not directed at fraudulent mismanagement, as such, of corporate affairs. Knauff v. Utah Construction & Mining Co., 408 F.2d 958 (10th Cir. 1969).

■ Finally, it is alleged in paragraph 16 that the defendants failed to advise Review 71 and other shareholders, presumably in the notice of the annual shareholders' meeting, that they did not intend to continue the operation of Alloys as a separate business entity, but, on the contrary, proposed to merge, and later did merge, with Plessey, Inc., a British corporation, "without rescinding the Key Employees Stock Bonus Plan." According to one of the affidavits, however, the possibility of a merger of Alloys with Plessey, Inc., with the former retaining its separate entity, though as a subsidiary, did not even arise until *after* the shareholders' meeting, and this statement was in nowise controverted by counter-affidavit. Under Fed.R.Civ.P. 12(b), if, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. In Jensen v. Voyles, 393 F.2d 131 (10th Cir. 1968), we held that pleadings do not create a fact issue when opposed to positive contrary statements contained in affidavits support-

ing a motion for summary judgment. Therefore, this particular allegation under the circumstances must give way to the affidavit and under *Jensen* does not create a fact issue.

Furthermore, the theory behind this particular allegation, as we understand it, is that upon adoption of the Plan, the equity of Review 71 and others similarly situated in Alloys was thereby "reduced by 50,000 shares for the purpose of the proposed merger with Plessey, Inc., for little or no consideration to Alloys." In other words, it is not the subsequent merger as such about which complaint is made. Rather, it is the fact that because of the continuation of the Plan, Review 71's interest in Alloys was diluted which in turn resulted in Review 71 having a "diluted" interest in Plessey. Again, we fail to see the materiality of such allegations where there is no contention that the subsequent ratification of the Plan by a majority of the stockholders was the result of fraud or deceptive and manipulative practice.

In this court, as in the trial court, counsel argues that Review 71's claim for relief not only parallels the claim asserted in Globus, Inc. v. Jaroff, D.C., 266 F.Supp. 524 (1967), but is "virtually identical" with the complaint which was there held to state a claim under Rule 10b–5. However, we deem the pleadings in *Globus* to be markedly different than those in the instant case. In *Globus*, after recognizing that in a 10b proceeding the causal relationship between the alleged misconduct and the damage complained of very probably need not rise to the level of strict proximate cause, it was stated that *some* causal relationship had to be averred and the complaint there under consideration was analyzed as follows:

> "To summarize, the court is satisfied that what the plaintiff is alleging is that the corporation, in whose behalf the suit is being brought, was damaged by means of entry into an

option agreement with its president which required the sale to him of newly issued shares at a price substantially lower than market; that ratification of this agreement was procured by way of fraud and deceit upon shareholders; that shareholders whose votes were necessary to a majority were deceived; and that the fraud and deceit consisted in the omission of such material items as price, date, duration and number of shares involved in the agreement.

"The foregoing allegations are sufficient to state a cause of action under § 10(b) of the Securities Exchange Act and Rule 10B–5 promulgated thereunder."

In short, the gravamen of the complaint in *Globus*, which case is relied on heavily by Review 71, is not to be found in the complaint here under consideration. For all these reasons, then, we hold that the allegations of misconduct are legally insufficient to state a claim under Rule 10b–5.

Review 71 sought unsuccessfully to be permitted to file an amended complaint. The trial court denied it the opportunity. However, Review 71 filed a motion for rehearing and attached to the motion an amended complaint. The trial court refused to thus reconsider its earlier ruling. We need not here determine whether the trial court erred in refusing to grant Review 71 the opportunity to present an amended complaint. Suffice it to say, we have examined the amended complaint tendered the trial court and find it to be subject to the same defects we perceive in the original complaint.

In disposing of this appeal on the ground that the complaint does not state a claim, we need not here consider the other ground urged in support of the trial court's dismissal; namely, that Review 71 lacked standing to bring this particular action under Rule 10b–5.

Judgment affirmed.