95 A.2d 465 (1953)
STAR PUB. CO.
v.
MARTIN.
Supreme Court of Delaware.
March 5, 1953.
William E. Taylor, Jr., of Wilmington, for appellant.
Daniel O. Hastings and August F. Walz, of the firm of Hastings, Stockly & Walz, of Wilmington, for appellee.
SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, JJ., sitting.
*466 TUNNELL, Justice.
On November 15, 1946, Joseph H. Martin, the appellee (for convenience hereinafter referred to simply as "Martin"), caused twenty-one notes to be entered by confession in the Superior Court of New Castle County as judgments against one J. Edwin Carter and also against appellant, Star Publishing Company (designated hereafter in this opinion as "Star"). In 1949, following extensive negotiations, Martin, Star, the said J. Edwin Carter, and one Stanley Ross entered into a formal agreement providing that Ross should take over the payment of the debt which was represented by the judgments, that Carter should be released from the said judgments, and that Star's position should be as it had been except for being co-debtor (whether as a principal or as surety we need not here consider) with Ross rather than with Carter.
The debt was in due course reduced from the original total of $105,500 to a balance of approximately $50,000; but payments fell into arrears, and on March 24, 1952, Martin caused execution to be issued on two defaulted judgments. Thereupon, on March 31, 1952, Star filed a motion in the Superior Court alleging, inter alia:
(a) that the judgment notes were obtained from Star without consideration;
(b) that the judgments were invalid because the notes on which they were based had not been properly executed;
(c) that the execution of the judgment notes was obtained by fraud, and that their entry in judgment, therefore, was a fraud upon the court;
and praying, inter alia:
(a) that the judgments be vacated; or
(b) that the judgments be opened and Star be permitted to interpose its above-mentioned defenses against them; and
(c) that all execution on any of the judgments be stayed.
Affidavits were filed; depositions were taken; and, upon the affidavits and depositions, the pleadings, and the arguments of counsel, the Superior Court, Judge Layton sitting, by an unreported opinion handed down on November 6, 1952, resolved to deny all the prayers of the motion to vacate or to open the judgments.
The opinion of November 6th discloses a separate adverse finding as to each of the three grounds put forward in Star's *467 motion. In respect to the third ground, the opinion has this to say:
"Finally, was fraud perpetrated on the defendants? I approach this phase of the case with some uncertainty because defendants have not made it at all plain just what the fraud is supposed to have been. Actually, I believe they have misconceived the effect of the alleged frauds as being applicable to Martin. Only in the deposition of Martin do facts appear which lend color to the charge of fraud and, when examined, none of this seems chargeable to Martin."
Later in the opinion, in further reference to the fraud point, this language appears:
"How can they possibly complain about Martin's conduct? True, Ross may have had conferences with Martin to persuade him to allow his personal liability to be substituted for Carter's, but there is not one whit of evidence that during these interviews Martin made any misrepresentations about the condition of the newspaper."
On November 11, 1952, a motion for reargument was denied, and order was entered in conformity with the opinion of November 6.
On the next day, November 12, 1952, appeal was taken to this court, and, except for an extension of the time for filing plaintiff's brief, the cause here proceeded in the customary fashion preparatory to argument. On January 15, 1953, however, Star filed a motion requesting that we
"remand this appeal to the Superior Court * * * for the presentation of newly discovered evidence in the form of the deposition of Stanley Ross * * * which said deposition was not available, and could not with reasonable diligence have been available to appellant on October 16th, 1952, when the case was heard on argument in the Superior Court * * *".
A copy of the Ross deposition, which had been taken on November 22, 1952, was filed in support of the motion. The transcript of that deposition discloses that Ross testified that, in an effort to induce Ross  a better financial risk than Carter  to put himself in Carter's place, Martin had led Ross to believe that Star's total indebtedness did not exceed $100,000, when Ross says that, on the contrary, it actually exceeded $300,000, and that Martin all the while knew that it far exceeded $100,000. At various other places in the deposition Ross accuses Martin of aiding Carter in leading him, Ross, into the transaction by distorted figures and false and misleading representations of one kind or another.
It appears from the Superior Court's opinion that Ross was, in 1949, at the time of the alleged fraudulent misrepresentations, acting as agent for certain then undisclosed principals, who, through him, at that time, and in a transaction to which the above matters were only incidental, purchased from Carter 87 per cent of the outstanding capital stock of Star.
Martin's counsel urge that the motion for remand in order to present new evidence has been made in the wrong court, that, being without original jurisdiction, we have no power to consider it, and that the motion, if it is in order anywhere, is so in the trial court only. Additionally, they urge that the motion is without merit because the alleged new evidence is immaterial. The procedural problems, of course, require first attention.
In which court should the instant motion be made?
In this jurisdiction, although similar circumstances have arisen before,[1] the point has not previously been contested, and we have no settled practice in respect to it. Moreover, the authorities elsewhere, where the matter is not regulated by statute, fall so far short of establishing a uniform procedure that any attempt to dispose of it purely on the weight of precedent must end in confusion. Consequently, notwithstanding a multitude of decisions, we must approach the problem almost as one of first impression.
Many courts, including those of the great majority of federal jurisdictions, hold that the first step is to be taken in the trial court.
Some of the authorities in this group, such as Isgrig v. United States, 4 Cir., 109 *468 F.2d 131; Wm. Goldman Theatres v. Loew's, Inc., 3 Cir., 163 F.2d 241, 244; and Boro Hall Corporation v. General Motors Corporation, 2 Cir., 130 F.2d 196, confine that first step to the mere filing of the appropriate motion below. When so limited, however, the requirement appears to be of a bare formality. Any useful function served in an appellate court by the mere lodging of a paper with the clerk of the trial court could certainly be accomplished by other means.
Other authorities, however, go further and hold that there should be no proceedings in the appellate court until the trial court has actually, though preliminarily, considered the motion for new trial on its merits. If the trial court should find the motion to be without merit, there would never be any interruption or delay in the appellate proceedings then pending.[2] If the decision should be otherwise, however, then it becomes appropriate to request the appellate court, in its discretion, to remand the record, so that what has been decided unofficially can be made official. Sometimes this request for remand is sent up by the trial court itself. Harper Bros. v. Klaw, 2 Cir., 272 F. 894, and Switzer v. Marzall, D.C., 96 F.Supp. 332. Sometimes a motion for remand is made in the appellate court by the moving party, reinforced, as stated above, by at least a tentative commitment of the court below as to what it will do by reason of the new evidence. Smith v. Pollin, 90 U.S.App.D.C. 178, 194 F.2d 349.
Whatever the virtues of either form of this practice may be in other jurisdictions, we are persuaded that it would not be suitable here. Upon the filing of an appeal, Rule "7" of this court calls up the original papers, which constitute the record for purposes of review. Lacking the papers, and perhaps no longer having at hand even a transcript of the testimony, our trial courts, after an appeal has been taken, are obviously not in a position to weigh new testimony, to relate it to what was previously heard, or to apply it to the pleadings.
Further, we cannot think it practicable or orderly to have a case prosecuted simultaneously in two courts. We have heretofore had occasion to point out that while an appeal is pending, action may be taken by trial courts to enforce compliance with the judgment below or to make allowances of suit money in aid of the appeal. Biggs Boiler Works Co. v. Smith, Del., 82 A.2d 919; duPont v. duPont, Del., 87 A.2d 394, 400. Such proceedings, of course, are entirely compatible with the proceedings for review. But we have never approved, and do not now approve, the practice of having a disappointed litigant to attack a judgment in two courts at once  in one court assailing it on the law, in another court on the facts. In such a situation the appellate court, and possibly the trial court as well, would be at work upon a case which promised, or threatened, soon to become moot upon grounds not presently before that court.
We conclude that logic, convenience, and sound practice combine to require that the first step in such a situation be taken in the court where the case is. See Black v. Black, 111 N.C. 300, 16 S.E. 412, and cases therein cited.
Having decided that the motion is properly before us, the next question concerns the extent of our jurisdiction in respect to it.
The authorities appear to be unanimous that the appellate court is without the power to grant ultimate relief. Roemer v. Simon, 91 U.S. 149, 23 L.Ed. 267; Realty-Acceptance Corp. v. Montgomery, 284 U.S. 547, 52 S.Ct. 215, 76 L.Ed. 476; and see Anno., 76 L.Ed. 480.
Many eminent jurists, however, have held that the appellate court should give such consideration to the force of the new evidence as will enable it to decide what the lower court would probably do with the motion in the event of a remand. If it reaches the conclusion that the judgment would probably be reversed in the lower court because of these newly found facts, *469 the appellate court will remand. But if it should conclude that the trial court would be most likely in the end to leave the judgment as it is, then the appellate court, in its discretion, will deny the motion to remand. Such authorities are Horne v. United States, 4 Cir., 51 F.2d 66; Wagner v. United States, 9 Cir., 118 F.2d 801; Wm. Goldman Theatres v. Loew's, Inc., supra; and Baruch v. Beech Aircraft Corp., 10 Cir., 172 F.2d 445.
To adopt such a practice in our court would in our opinion be going too far. While there is a natural and  in the interest of putting an end to litigation  an entirely proper reluctance to interrupt the progress of suits and turn back to matters which were thought to have been settled already, no court in a proper case can deny the right to have newly discovered evidence heard and considered. Balancing and reconciling these contending factors as best we can, it appears to us to be the duty of an appellate court, upon a motion to remand on account of alleged new evidence, to consider any objection to that motion which is based upon a principle of law. Thus, for example, if, under the rules[3] of the lower court, the time for entertaining applications for new trial on the basis of newly-discovered evidence had expired, or if the new evidence would be inadmissible, or if the theory it purported to support either failed to state a claim or failed to constitute a defense, as the case might be, the appellate court would deny the application. Likewise, if it should appear incontrovertibly, or if an allegation should stand uncontradicted, that the moving party had been negligent in not having the evidence in question properly brought to the attention of the trial court before the appeal was taken, the appellate court would refuse to remand. But we think that at that point the proper function of the appellate court is fulfilled.
Nothing is more clear to us than that we are a court of limited jurisdiction. If an issue of fact which must be resolved stands before us unresolved, it is ordinarily not to be settled by us, but by a court designed for the trial of issues of fact.
Moreover, quite apart from this basic principle, we cannot agree that it would be an expeditious or convenient practice to have the appellate court, first, and then the trial court, over again, giving careful study to the entire record of a case, to decide whether a new trial should "probably" be granted, or should be granted, as the case may be. And if the weight of any testimony is involved, as would often be the case, the appellate court is, as always, under the important handicap of never having seen or heard the witnesses.
We are, therefore, driven to the conclusion that the proper roles of the respective courts in this situation are their traditional roles. If there is any reason in law why this alleged new evidence should not be let in and considered, or why it would not affect the outcome of the case if it were, it is the duty of the appellate court to decline to remand. So much is within the true scope of appellate jurisdiction. On the other hand, if what develops is a material conflict of fact, then original jurisdiction is invoked, and the matter must go back to the trial court[4]  and must do so, moreover, unequivocally, without the embarassment of any advance *470 intimation from the appellate court, express or implied, as to how original jurisdiction, in the premises, "probably" should be exercised.
Martin's counsel have earnestly pressed that we lack the power to remand the case for the purpose of having the trial court consider new evidence. Their theory is that our powers are exclusively and in a very strict and technical sense, limited to the consideration of errors of law in cases coming up on appeal. But we are not impressed by this contention. Any court must surely have the inherent power to halt the proceedings before it for such brief interval as is reasonably required to ascertain whether or not it is wasting its time and that of the parties before it. This is no more than a simple application of the axiom that courts will not ordinarily decide moot cases.
How, then, does the instant motion stand this test of legal sufficiency?
These judgments were entered against Star in 1946. The alleged fraudulent statements and conduct are said in the deposition to have occurred in 1949. Obviously 1949 transactions could not have influenced what happened in 1946.
A similar point was involved in the case of Miller v. Loft, Inc., 17 Del.Ch. 301, 304, 153 A. 861. In a bill to set aside a contract as having been fraudulently induced, complainant there sought to rely upon certain representations which were not made until after the contract had been executed. Chancellor Josiah Wolcott sustained a demurrer based upon the applicable logic.
Moreover, in the instant case there is also difficulty as to the party affected. This allegedly fraudulent conduct was directed at Ross. No suggestion has been made that Star was in any way injured by it. The motion appears to have confused the rights of the corporation with the rights of the purchaser of a majority of the stock in the corporation.
The trial court, therefore, could not with propriety alter its conclusion upon the basis of the newly discovered evidence, and the motion to remand must be denied.
NOTES
[1] Kennedy v. Emerald Coal & Coke Co., 28 Del.Ch. 405, 418, 42 A.2d 398.
[2] Since the case is not actually in the trial court, and the trial court's findings would necessarily be only tentative and anticipatory, it is not clear to us under this practice where the moving party, if unsuccessful, is thought to stand in respect to an appeal for abuse of discretion.
[3] Under the 1948 rules of the Superior Court the time within which to make motions for new trial on the basis of newly discovered evidence has apparently been extended as far as possible. Under the former rules of the Superior Court, under the principle of Roemer v. Simon, supra, even such an application as the present one would have fallen, because Judge Layton's order was entered during the November Term, 1952, and that term ended on January 5, 1953, ten days before the present motion was filed in our court. In the Federal Rules of Civil Procedure, 28 U.S.C.A., which the new Superior Court rules generally follow, a time limit of one year is provided for such a motion. But the present Rule 60 (b) imposes no express time limit whatever, and, so far as we have found, there has been no judicial construction suggesting the existence of any implied limitation. The reason for this departure from the form of the federal rule is not readily apparent. The explanation, of course, does not appear in the rule itself, and there are available no minutes of the proceedings of the Bar Association committee which drafted the rules.
[4] See Gairing Tool Co. v. Eclipse Interchangeable Counterbore Co., 6 Cir., 48 F.2d 73; Boro Hall Corporation v. General Motors Corporation, 2 Cir., 130 F. 2d 196, 197.