John Maciey, Jr., and J. Judith Maciey, his wife,
Defendants Below,
Appellants,

*vs.*

Walter S. Woods and Marjorie H. Woods, his wife,
Plaintiffs Below,
Appellees.

*Supreme Court on Appeal, October 14, 1959.*

*Elwood F. Melson, Jr.,* Wilmington, for appellants.

*Charles F. Daley, Jr.,* Wilmington, for appellees.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

WOLCOTT, Justice: This appeal involves the question of whether or not the plaintiffs-appellees have the right to the use of a right of way over a 50-foot wide strip of land between their lot and the lot of the defendants-appellants in Forest Hills Park.

A resumé of the facts is necessary. In February, 1939 Charles P. Weldin caused to be recorded, with the official approval required by 9 Del.C. § 2510, a development plat for Forest Hills Park. The plat contains streets and lot layouts. Included on it is a street designated as Gunning Bedford Boulevard running from north to south to a point at which it makes a 90° curve to the west. On the plat, Lot No. 9 (the defendants-appellants' lot) and Lot No. 8 (the plaintiffs-appellees' lot) adjoin with a common boundary approximately opposite the outside point of curve of Gunning Bedford Boulevard.

In 1948, Weldin apparently decided it would be desirable to connect Forest Hills Park with Weldin Road, a public road, by a road running through a neighboring development on the south known as Beechwold. Accordingly, he caused a plat to be prepared showing a 50-foot wide strip taken from Lot No. 9, running along the boundary of Lot No. 8 and extending the depth of those two lots to the boundary line of Beechwold. The 50-foot wide strip was labeled on the plat as

"Proposed Ext'n. to Weldin Road." The 1948 plat, however, was not recorded by Weldin pursuant to 9 Del.C. § 2510. Nor does it appear that Weldin ever submitted the plat to the county authorities for approval. There is no evidence in the record to show that the plat was ever shown to either the plaintiffs or defendants, or their predecessors in title.

On March 15, 1951, Weldin conveyed to the defendants

"a part of Lot No. 9 as shown on the Plan of Forest Hills Park, as it is recorded * * * in Deed Record E, Vol. 36, Page 601, supplemented with a more recent survey by Price and Price, Civil Engineers and Surveyors * * *"

In the deed to the defendants the westerly boundary line of the lot is described as

"the Easterly side of a proposed fifty feet wide street which is the extension South 1 degree 06 minutes 05 seconds East of the Gunning Bedford Boulevard * * *"

On December 23, 1952, Weldin conveyed to the plaintiffs' predecessors in title

"Lot No. 8, as shown on the Plot of Forest Hills Park, as said plot is of record in Deed Record E, Volume 36, Page 601 * * *"

The easterly boundary line of Lot No. 8 is described as running along a "fifty feet wide reservation for a proposed extension of Gunning Bedford Boulevard to Weldin Road."

The 1952 deed to the plaintiffs' predecessors in title also contained the following grant:

"Together with the free and uninterrupted right, use and privilege of the above mentioned and described 50 feet wide extension of Gunning Bedford Boulevard in common with others entitled thereto forever."

Thereafter, on October 21, 1957, the proposed extension of Gunning Bedford Boulevard to Weldin Road passing through Beechwold

not having been accomplished, Weldin conveyed to the defendants title to the 50-foot wide strip reserved for that purpose in the following language:

> "This deed grants and conveys to the said parties of the second part all the right, title and interest of the said party of the first in and to a proposed fifty feet wide street or driveway, proposed as a possible extension of Gunning Bedford Boulevard Southerly to connect with a possible establishment of a road through Beechwold to connect with Weldin Road. Subject to any right or interest which said party of the first part hereto may have granted or conveyed to the owner of any lot in Forest Hills Park in said proposed street or highway as an extension of Gunning Bedford Boulevard."

Upon acquiring title to the fee of the 50-foot wide strip, the defendants erected a fence along the entire westerly side of the strip and along the plaintiffs' easterly boundary line. The plaintiffs removed the fence and instituted this action to enjoin the defendants from replacing it.

The Vice-Chancellor granted summary judgment to the plaintiffs and permanently enjoined the defendants from interfering with the free and uninterrupted use by the plaintiffs of the 50-foot wide strip. From this judgment, the defendants appeal.

Initially, we observe that there was no statutory dedication of the 50-foot wide strip for public use under 9 Del.C. § 2510, which provides that the recording of an approved plat shall be deemed to be a dedication of the streets shown thereon to the public use. This follows from the fact that the 1948 plat was never recorded.

Nor, has there been a common law dedication of the strip to public use for there is no evidence before us of public use of the strip to which Weldin assented, which, under the rule announced in *Hart v. Durr, ante p.* 523, 154 *A.2d* 898, would amount to a dedication of the land to public use.

The plaintiffs, however, contend that they were granted an implied private easement by reason of the description of their lot as

bounded on the east by the 50-foot wide reservation for the proposed extension of Gunning Bedford Boulevard. Plaintiffs rely on the rule that the law implies an easement over a private road when such a road is one of the bounds of the property conveyed.

Plaintiffs cite *Tindall v. Corbi,* 37 *Del.Ch.* 491, 145 *A.2d* 247 and *Betley v. Gordy Construction Co.,* 35 *Del.Ch.* 253, 115 *A.2d* 475. These two cases, however, are inapposite for in both of them an implied easement was held to have been created because of the existence in fact of a private road on which the conveyed properties bounded. Such is not the case before us, for the proposed extension to Weldin Road was never opened or used by anyone as a road or way. Nor has the proposed extension ever been physically laid out or indicated on the ground in any fashion. We think, accordingly, that no easement arises by implication.

Next, plaintiffs argue with more force that the deed to their predecessors in title conveyed an express private easement over the strip in question. They point to the language in that deed granting the use and privilege to the proposed extension. The argument is that this constitutes an express grant of a private easement since, if the grant were intended merely as an insurance of the right to use the proposed extension when it was actually opened, the language in the deed becomes superfluous, because there is no requirement of an express grant to a property owner of the right to use a public street. The plaintiffs say that if an ambiguity exists in the language of a deed, that ambiguity must be resolved in favor of the grantees. Richard Paul, Inc. v. Union Improvement Co., 33 Del.Ch. 113, 91 A.2d 49.

We think the question of whether or not an express grant of a private easement over the strip in question was made to plaintiffs or their predecessors in title depends upon the meaning of the language of the deed in the light of the intention of the parties as determined by the surrounding facts and circumstances. We do not understand the Richard Paul case to hold otherwise.

It is true that ambiguities in a grant are to be resolved in favor of the grantees, but we think this rule of construction must yield to the paramount rule that the intention of the parties is to be given

effect if it can be ascertained and if, as ascertained, it does not contravene the clear meaning of the words of the grant. 16 Am.Jur., Deeds, §160. No other rule can be accepted because the fundamental function of rules of construction is to determine the intention of the parties.

We think there is an ambiguity in the language of the grant to the plaintiffs. The language relied on by them as having made an express grant of a private easement is that conveying to the plaintiffs' predecessors "the right, use and privilege of the * * * extension of Gunning Bedford Boulevard in common with others entitled thereto forever."

It is to be noted that the grant is of the use to a proposed public street which, as we have noted, never came into being, and, further, that the grant is of the use in common with others entitled thereto. The grant of the right to use in common with others having the same right militates against the conclusion that the right to the use of a private way was intended to be granted the plaintiffs' predecessors.

The actual layout of the two lots involved also weighs against an intention on the part of Weldin to grant a private easement in the strip. Lot No. 8, the plaintiffs' property has a frontage on Gunning Bedford Boulevard of 143 feet—certainly, ample to permit full use of the lot— and the grant of access from the side, while, perhaps, desirable from the lot owners' point of view, was not necessary to enable them to use the property. Furthermore, it nowhere appears that plaintiffs or their predecessors paid any additional consideration for the claimed easement.

Finally, the express grant, if it was such, would give the plaintiffs the use of the 50-foot wide strip for the entire depth of their lot, a distance of 250 feet. The purpose of such a grant would appear, at best, obscure, for the strip comes to an end at the boundary of Beechwold through which there is no access. The grant of an easement of this magnitude would appear to be without any reasonable explanation.

We think, therefore, that the ambiguous language in the plaintiffs' deed must be held to be merely a grant of the right to the use of the proposed extension when it becomes a street or, perhaps, as

long as Weldin reserved it for future use as a street. When Weldin withdrew the land from that purpose, the grant became inoperable.

It is true, as plaintiffs point out, that the deed conveying the fee of the strip to defendants does so subject to any rights in the strip which Weldin may have granted to others. This provision, however, does not help the plaintiffs for, as we have pointed out, the right conveyed to plaintiffs was not a private easement.

Plaintiffs rely strongly upon an unreported decision of the Court of Chancery, Fleming v. Glaeser, Civil Action 343, 1952, which they claim is undistinguishable from the present case. In the Fleming case a proposed development had been laid out by an unrecorded plot which showed lots on both sides of a street to be known as "High Street." The plaintiff acquired a lot fronting on an existing public road and on the laid out High Street. The deed of conveyance granted the free and uninterrupted right to the use of High Road. After the acquisition by the plaintiff of his lot, the developers sold the balance of the tract to the defendant who proceeded to fence off High Road. The Chancellor issued an injunction against the maintenance of the barriers holding that plaintiff was entitled to an easement over High Road.

We think the Fleming case, however, is distinguishable from the case at bar. In the Fleming case the plaintiff had continuously been using a portion of High Road for access to his garage on the back of his lot. No such circumstance is present in the case at bar.

For the foregoing reasons, the judgment below is reversed.