STATE v. JAMES F. WATSON, SR.

CAREY, J., sitting.

*Everett F. Warrington* for defendant.

*Howard T. Ennis, Jr.,* Deputy Attorney-General, and *James C. Sabo* (of Tunnell and Raysor) for the State.

Superior Court for Sussex County, No. 84, Criminal Action, 1961.

(*December* 8, 1961.)

CAREY, J.:

Defendant was found guilty by a jury on a charge of bastardy under Title 13 *Delaware Code* Section 1321. He now asks for a new trial on the basis of newly discovered evidence,

as set forth in certain affidavits. The question is whether the material contained therein justifies the granting of a new trial.

The nature of the showing which must be made to justify a new trial because of newly discovered evidence is well established in this State by the cases of *Chandler v. Miles*, 8 W. W. Harr. 431, 193 A. 576; *VanSant v. Kowalewski*, 5 Boyce 92, 90 A. 421; *Windsor v. Hearn*, 5 W. W. Harr. 184, 161 A. 288; and *Bringhurst v. Harkins*, 2 W. W. Harr. 324, 122 A. 783. Such applications are not favored, and are subjected to the closest scrutiny. It must appear that the new evidence is such as will probably change the result if a new trial is granted; that it could not have been discovered before trial by the exercise of due diligence; that it is material to the issue; that it is not merely cumulative; and that it is not merely of an impeaching or contradictory character.

It is herein assumed, without deciding, that the material now presented is "newly discovered" within the meaning of the foregoing principle. Even so, in my opinion, the evidence which can be considered by the Court is insufficient to warrant the granting of defendant's motion.

The material presented is divisible into three categories, which will be considered separately. The first class consists of two affidavits to the general effect that the prosecuting witness was an undesirable tenant and neighbor, a conclusion apparently predicated upon other statements therein to the effect that several different men called to see the prosecuting witness at her home at various times and stayed as long as several hours, these men not being her brother or brother-in-law. At the time, the prosecutrix was divorced and had two children living with her. Although some of these alleged visits occurred when the children were not home, there is nothing in these affidavits even suggesting illicit relations with those visitors. If they are presented to show that some other

man is or could be the father of the child here involved, they completely fail in that purpose. If they are presented merely to contradict some statement made by the prosecutrix on the stand, they amount simply to impeaching or contradictory testimony which does not justify a new trial. If they are presented merely to cast reflection upon her character, they not only fail to do this but the testimony would be inadmissible in any event under *State v. Cox*, 7 W. W. Harr. 238, 181 A. 654. Under no theory which comes to mind, could those affidavits warrant the present relief.

The second category consists of statements made to defendant and his wife by a man, who once lived with the prosecutrix, to the effect that at some date after June 1959 (when they separated) she accused him of being the father of a child which she was carrying. It was definitely established that the child we are now concerned with was not conceived until late in September or early in October 1959. The present affidavits indicate that this man never saw the prosecutrix after June of that year. For the very same reasons mentioned above concerning the first category, these alleged facts do not warrant the relief prayed for, even if we overlook the hearsay nature of the affidavits.

The third category consists of affidavits by the defendant, his wife and his son-in-law concerning conversations held with several of the jurors who sat in the case. Without discussing in detail the statements therein, it will suffice to say that they concern events which took place during the jury's deliberations in the jury room. Obviously, this is an attempt to impeach the verdict by statements of the jurors themselves. I am unable to find any Delaware case which has considered this subject but the point has been ruled upon in a great many of our sister states. The holding of the vast majority is against this practice, in the absence of statute, at least when the matters of impeachment are not extrinsic to the verdict. Dozens of cases could be cited to support this view. Many

of them are mentioned in 53 Am. Jur. 769, etc. and 89 C. J. S. Trial § 523, p. 214.

The rule forbidding jurors to impeach their verdict by affidavits or testimony concerning what transpires during their deliberations is a salutary rule of public policy. Its purpose is to protect the privacy of the jury room. As stated in 53 Am. Jur. 770,

"It is to prevent overzealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration. Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath".

A departure from this rule would amount to judicial approval of the practice of litigants or their counsel questioning jurors about everything that has been said in the jury room, to the great embarrassment and harassment of those jurors. The very thought is abhorrent. What layman would ever willingly serve in a murder case if he knew that he was going to be subjected, with Court approval, to later private cross-examination by relatives of the man he has convicted? What juror would feel free to express his thoughts to his fellow-jurors if he knows that he or they can later be made to disclose his statements? The truth is that the rule is practically a necessity and is of such importance as to override any occasional injustice suffered by individual litigants.

If the information on this point were predicated upon affidavits of the jurors themselves, it could not be considered for the purpose of impeaching their verdict. Certainly, it is

even more objectionable when the information is presented in the present hearsay manner.

For the reasons stated, the moton for new trial must be denied. A hearing will be scheduled in the near future for the purpose of determining the amount of a support order.