Robert C. ROHNER and Vera M. Rohner, his wife, t/a Mason & Dixon Motel, Defendants below, Appellants,

v.

Edward NIEMANN, Jr. and Barbara F. Niemann, his wife, Plaintiffs below, Appellees.

Supreme Court of Delaware.

Submitted June 13, 1977.

Decided Oct. 6, 1977.

Melvyn I. Monzack of Walsh, Monzack & Owens, Wilmington, for defendants below, appellants.

James M. Tunnell, Jr. and James F. Waehler of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs below, appellees.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice (for the majority).

In this ejectment action defendants appeal from a Superior Court order granting judgment in favor of plaintiffs. Defendants also have moved to remand the case to the Superior Court for the taking of additional evidence discovered after the appeal was filed. There are three issues presented in this appeal, the first being the question of the proper interpretation of a 1941 deed found in plaintiffs' chain of title which delineates the property lines of the parties to this suit. The second issue is the correct measure of damages suffered by plaintiffs as a result of defendants' alleged trespass. Finally is the issue, raised by defendants' motion, of whether or not this case should be remanded for the taking of additional evidence. For the reasons stated herein, we deny the motion for remand and affirm.

I

Plaintiffs and defendants are record owners of adjacent tracts of land in Fenwick Island, Delaware, located at the southwest corner of the intersection of Delaware routes 14 and 58. Defendants operate a business establishment, known as the Mason and Dixon Motel, on part of their property. In connection with the operation of their motel defendants constructed certain improvements, including a chain link fence, a concrete sidewalk, and a loose stone parking area, on what they contend is part of their land. Plaintiffs claim that these improvements encroach upon their property, and constitute a trespass thereon. Plaintiffs instituted this suit in ejectment to force removal of the improvements, and to recover damages for the alleged trespass. Defendants admitted a minimal trespass, but claimed that they hold fee title to the major portion of the land upon which the improvements were made.

Of critical import to this case and plaintiffs' cause is a 1941 deed from N. Walter Suplee and his wife to L. P. Faucett, Inc. and Fred Worth, plaintiffs' predecessors in title. This deed is the document which initially defined and described the extent of the Faucett group's grant, and then necessarily plaintiffs' grant. The deed contained the following description of the subject property:

"All that certain lot, piece or parcel of land situate, lying and being at 'Fenwick Island' aforesaid at the Southwestern intersection of the State Highway leading from Bethany Beach to the Maryland Line and the State Highway leading from Selbyville to Fenwick Island, more particularly described as follows: Beginning at the Southwesterly intersection of the aforesaid two roads and *running Southerly with the Westerly boundary line at the first mentioned road to its intersection with Delaware-Maryland State line*; thence with said State line westerly 100 feet; thence Northerly and parallel to the first mentioned line such distance as will reach the Southerly right of way line

of the State Highway leading from Selbyville to Fenwick Island; thence with said Southerly right of way line in an Easterly direction 100 feet to the place of beginning, be the contents thereof what they may." [1] (emphasis supplied)

The basic problem in interpreting this deed is the construction to be placed upon the words ". . . westerly boundary line . . ." of Delaware route 14.

The facts surrounding the 1941 deed aid us in the interpretation thereof, and shall be set forth in some detail. We take judicial notice of the fact that in 1931, then Resident Judge of Sussex County, the Honorable Charles S. Richards, approved the original road leading from the southerly edge of Bethany Beach to the Delaware-Maryland line in accordance with Chapter 55 of the 1935 Revised Code of Delaware. The road was 40 feet in width when it was first constructed. On March 9, 1938, L. P. Faucett, Inc., and Fred Worth recorded a plot in the Office for the Recording of Deeds of Sussex County which depicted route 14 as being 60 feet in width as it passes along the easterly boundary of plaintiffs' property. On September 30, 1938, L. P. Faucett, Inc., and Fred Worth granted an option contract for consideration of one dollar to the State Highway Department, giving the Department the right to purchase for one dollar land sufficient to construct thereon, as a state highway, the road shown on the plan designated as contract number 550.[2] Contract number 550, dated

July 30, 1936, was a plan for widening Delaware route 14, and showed the width of route 14 as it passes plaintiffs' property to be 100 feet. Although by its terms the option contract expired one year from date, and the State Highway Department never exercised its option to purchase the land in question, plots recorded in the Department's files and dated both prior and subsequent to the 1941 deed indicate that the State assumed it held a 100 foot right of way along plaintiffs' eastern boundary. The consideration for the option and the purchase price stated therein were nominal, and as expressed in the contract itself, the real benefit flowing to the Faucett group was the construction of an improved roadway by their property.

In the period from 1938 to 1941 there developed a controversy between N. Walter Suplee and L. P. Faucett, Inc., each party claiming the same tracts of land. The dispute was settled by an exchange of deeds wherein Suplee gave Faucett the 1941 deed in question, and, in return, Faucett quitclaimed to Suplee all lands west of the land contained in the 1941 grant. Faucett received a lot having a depth of 100 feet westerly from the "western boundary" of route 14 and Suplee received the land to the west of Faucett's lot, being the same land now owned by defendants and the subject of this litigation.

Plaintiffs contend that the phrase ". . . westerly boundary line . . ." of route 14 refers to the western end of the

1. This language is quoted from the 1941 deed from N. Walter Suplee and wife to L. P. Faucett, Inc., and Fred Worth, recorded in Sussex County at Deed Book No. 334, page 6.

2. The option contract dated September 13, 1938, reads in its pertinent parts as follows:
"Whereas the said Highway Department of the State of Delaware proposes to lay out and construct as a State Highway the road shown on the plan and designated as Contract No. 550 between Fenwick Island and Bethany Beach, and whereas the construction of the said road will be of material benefit and advantage to the parties of the first part hereto.
NOW THIS AGREEMENT WITNESSETH that in consideration of the sum of One Dollar ($1.00) now paid by the said party of the second part to the said parties of the first part, the receipt whereof is hereby acknowledged, the said parties of the first part do hereby give and grant to the said party of the second part, his Executors, Administrators and Assigns the exclusive right and option to purchase at any time during the period of one year from the date hereof for the sum of One Dollar; and other consideration as follows: No conditions
All that certain lot, piece or parcel of land, situate in Baltimore Hundred, Sussex County and State of Delaware, the property of the said parties of the first part, which said lot of land is more particularly bounded and described on the above mentioned plan which is hereby made a part of this agreement."

right of way of route 14, as described in the option granted by the Faucett group to the State, and in certain contracts of the State Highway Department. Defendants interpret the clause as referring not to the right of way, but to the actual physical end of the road as it existed in 1941.[3] Since it appears the road was only 40 feet in width in 1941, the right of way would have extended 30 feet further to the west than the physical end of the road. (And the right of way would have extended 30 feet further east than the road bed giving the right of way a total width of 100 feet). Thus, under plaintiffs' interpretation, the beginning of their westerly extension is pushed 30 feet further west and their grant would include the land which defendants improved. In contrast, defendants' interpretation shifts plaintiffs' lot 30 feet eastward putting the improvements almost entirely within the boundaries of their grant, any trespass being minimal.

The Trial Court concluded that plaintiffs' interpretation of the deed was correct, and, therefore, defendants had trespassed to the greater extent. The Court also accepted plaintiffs' evidence concerning the temporal extent of the trespass, and the fair rental value of the property upon which the trespass occurred. Accordingly the Court rendered a money judgment in plaintiffs' favor in the amount of $10,636.44.

## II

Defendants' first argument is that the Trial Court erred in its construction of the language of the 1941 deed in that applicable legal principles were ignored by the Court when it made its interpretation. We find no error in the Trial Court's interpretation of the deed.

■ The construction of a deed is a question of law upon which the court must rule. *Belcher v. Elliott*, 6 Cir., 312 F.2d 245 (1966); *Cragin v. Woollett*, 104 N.H. 202, 182 A.2d 457 (1962). The deed interpretation being a legal question, this Court must review the Trial Court's decision for errors of law. *duPont v. duPont*, Del.Supr., 9 Storey 206, 216 A.2d 674 (1966). The scope and extent of a grant contained in a deed depends upon the meaning of the language of the deed, and where that language contains ambiguities the deed must be read in the light of the intent of the parties as determined by the facts and circumstances surrounding the transaction. *Maciey v. Woods*, Del.Supr., 38 Del.Ch. 528, 154 A.2d 901 (1959); *Richard Paul, Inc. v. Union Improvement Co.*, Del.Supr., 33 Del.Ch. 113, 91 A.2d 49 (1952). Where uncertainties appear in the grant, they must be resolved in favor of the grantee as long as such a construction does not violate any apparent intention of the parties to the transaction. *Maciey v. Woods*, supra.

■ Applying these rules of construction to the Suplee to Faucett deed, we too agree with the plaintiffs' contention that the parties intended the grant to extend westerly from the western end of the proposed 100 foot right of way of route 14. Both the Faucett group and the State Highway Department considered the land necessary for the improvement of route 14 to have been dedicated to public use, even though no actual conveyance of that property had been made.[4] The Faucett group apparently regarded the option contract as an actual conveyance, and confirmed their belief that the State held a 100 foot right of way by recording various plots which described it,

3. At trial, the width of the right-of-way was unchallenged by defendants. Their defense at trial, relying solely on the deed's use of "boundary line" instead of "right-of-way", was that the 1941 deed should be construed in such a manner as to measure the depth of plaintiffs' lot from the travelled portion of Route 14 as it existed in 1941. The unchanged theory of the defendants' case was carried into their opening brief on this appeal by the statement: "The central issue in construing the meaning of the crucial 1941 deed hinges upon resolution of the question: Should the term "boundary" be read as synonymous with the term "right-of-way". The theory behind the motion to remand, discussed *infra*, nowhere appears in the record of the trial or in the discussion of the "central issue" on this appeal.

4. The present roadway is 100 feet in width, although the State Highway Department still holds no written grant of title to the land other than the expired option contract.

including an undated plot filed with the Recorder of Deeds office on September 20, 1949. In addition, it was to the Faucett group's advantage to have the roadway improved and widened, as evidenced by the express language of the option, and the nominal price stated therein. It is unreasonable to assume, we think, that in 1938 these people would attempt to give the necessary land to the State for the highway, and then in 1941 they would accept this same land in settlement of their dispute with Suplee. Defendants' interpretation of the 1941 deed would require us to accept as fact that the Faucett group acted in such an inconsistent manner, when all evidence of their dealings in this area points to the opposite conclusion, i. e. the 100 foot right of way was not part of the land granted to them by Suplee, but rather was considered by all to have been set aside for improvement of the highway.

Turning to the other parties involved in the development of Fenwick Island, we note that Highway Department records contain maps produced in 1936, 1939, and 1941 which show the width of route 14 as it passes plaintiffs' property as being 100 feet. Mr. Suplee conducted a variety of transactions dealing with land in Fenwick Island in 1941 and 1942, and in all of these he regarded the right of way owned by the Highway Department to be 100 feet in width. Specifically, Mr. Suplee cooperated in the State's effort to acquire sufficient land to improve route 14 by granting to the State and the Highway Department lands described in several deeds which recognized the proposed 100 foot right of way, and which in fact included lands that became part of that right of way. The motivating factor behind these conveyances appears to have been similar to that which was behind the Faucett's grant of the option contract—the specter of enhanced property values resulting from an improved roadway.

Given the facts that both parties to the 1941 transaction believed that the 100 foot right of way had been conveyed to the State for construction of route 14 through Fenwick Island, and that they approved of and encouraged the State's efforts, we agree with the Trial Court that the only logical construction of the deed language "westerly boundary line" of route 14 consistent with the intent of the parties is plaintiffs' interpretation, which puts Faucett's eastern border along the western end of the proposed 100 feet wide right of way. Because of this interpretation of the deed, any evidence of facts that the Highway Department actually held record title to a 40 or 60 foot right of way, or that the actual roadway was only 40 feet in width in 1941 would be irrelevant. The parties believed that the right of way was 100 feet in width, and in fact desired that the road be expanded to those dimensions. It is in accordance with their beliefs and intentions that the deed in question must be interpreted.

### III

The Trial Court found that the trespass began in October, 1972, and continued to the date of trial. Therefore, the Court awarded damages based on the fair rental value of the property upon which the trespass occurred for the entire period. Defendants allege that the Court below erred in its award in that the statutory time limitation for recovery of lost rent due to a trespass was not applied, and the record did not support the fair rental value placed on plaintiffs' property and used to calculate the award.

Neither party disputes the lower Court's finding concerning the temporal extent of the trespass. However, defendants assert that the amount of mesne profits recoverable after a successful ejectment action is limited by 10 *Del.C.* § 8110[5] to the

---

**5.** The section reads as follows:

§ 8110. Mesne profits after ejectment.

When, after a recovery in ejectment, an action is brought for mesne profits, if such action is commenced within 6 months, after the affirmance of the judgment, or other determination of the proceeding in error, the action shall, so far as to avoid the intermediate operation of § 8106 of this title, be deemed a continuation of the proceeding in ejectment. The plaintiff shall not be debarred from recovering mesne profits for 3 years next preceding the commencement of the ejectment.

damages suffered the three years immediately preceding the filing of the action in ejectment. Since the trespass began in October, 1972, and the ejectment action was filed on August 15, 1974, defendants argue that damages should be allowed only for the time between these two dates. In other words defendants interpret 10 *Del.C.* § 8110 as limiting all recovery of mesne profits to the damages which accrue in the period preceding an action in ejectment, limited further by the three year rule. Thus defendants conclude the lower court erred when it awarded damages to plaintiffs for profits lost after the filing of the action.

We find defendants' interpretation of section 8110 strained and untenable. The wording of the statute reveals that its basic import is to negate the operation of 10 *Del.C.* § 8106, the general 3 year statute of limitations, from an action to recover lost profits caused by a trespass. Section 8110 expressly allows recovery of mesne profits for 3 years next preceding the commencement of the ejectment, and it says nothing concerning recovery for loss of such profits after the initiation of suit. Nothing in the wording of the law forbids recovery of post-suit mesne profits, and we refuse to imply such a bar. To interpret the statute as defendants suggest would allow a defendant in ejectment to stall the litigation in any manner while continuing the trespass without fear of accrual of further damages. We hold that 10 *Del.C.* § 8110 does not bar claims for mesne profits in an ejectment case which accrue after the commencement of the action.

■ Defendants also claim that the Trial Court erred in its findings concerning the fair rental value of the land upon which the trespass accrued, and the damage calculations derived therefrom. The testimony of plaintiffs' witness who gave his opinion as to the fair rental value of plaintiffs' land was unrebutted, and the Trial Judge justifiably relied on it. The determination of the fair rental value and the damage calculations made by the Trial Court are supported by the record and as such shall not be disturbed on appeal.

IV

■ Defendants' final contention is that this Court should remand this proceeding to Superior Court for the taking of additional evidence which defendants discovered after trial. The new evidence, rendered for the first time after this appeal was taken, would show that the State Highway Department held record title to a 40 foot right of way at the point where route 14 passed plaintiffs' property in 1941, not the 100 foot right of way all parties assumed at trial. This evidence, defendants argue, would, even under the "right of way" interpretation of the 1941 deed, adjust plaintiffs' eastern border at least 30 feet eastward, thus minimizing any trespass committed by defendants.

The motion for remand amounts to an impermissible effort to retry the case on a new theory. The requirements necessary for a remand for the taking of newly discovered evidence were succinctly set forth in *State v. Watson*, Del.Supr., 5 Storey 285, 186 A.2d 543 (1961), as follows:

"It must appear that the new evidence is such as will probably change the result if a new trial is granted; that it could not have been discovered before trial by the exercise of due diligence; that it is material to the issue; that it is not merely cumulative; and that it is not merely of an impeaching or contradictory character."

See also *Star Publishing Co. v. Martin*, Del. Supr., 8 Terry 585, 95 A.2d 465 (1953). Defendants have failed to sustain their burden with respect to at least three of the above requirements and, therefore, we deny the motion to remand.

Perhaps the most important requirement which must be met in order for a litigant to be successful in a motion to remand to take

newly discovered evidence, is the burden of showing that the evidence will probably change the result reached at trial. The interpretation of the deed in question adopted by the Trial Court, which we find correct, is based on the intent of the parties. It has been concluded that the parties intended to convey a lot 100 feet in width measured from the 100 foot right of way to which the State Highway Department held an option in 1941; that the parties acted without regard to the width of the right of way as shown by the record and without regard to the fact that the Highway Department never exercised its option. As a result, we are of the opinion that defendants' new evidence that the Highway Department held record title to only a 40 foot right of way in 1941 is irrelevant to the issue of the intent of the parties and the proper construction of the deed. The new evidence would not change the result reached in the case at bar.

Furthermore, the defendants have not demonstrated that the new evidence was undiscoverable at the time of trial. The evidence was contained in the records of both the State Highway Department and of the Sussex County Recorder of Deeds. Although it appears that defendants may have been innocently misled to some extent by officials of these offices, any misrepresentation may certainly not be charged to the plaintiff. In fact a careful check of the records would have revealed the evidence now sought to be used as the basis for a motion to remand. Also the new evidence may be viewed as merely impeaching evidence previously presented by both plaintiffs and defendants at trial. So for the reasons that it would not effect the result, it was discoverable before trial, and it is merely impeaching, the new evidence is insufficient to compel a remand in this case.

## V

We conclude that a proper construction of the Suplee-Faucett deed, in accordance with the intent of the parties to the transaction,

places plaintiffs' eastern boundary along the 100 foot right of way dedicated for expansion of route 14, and plaintiffs' western boundary 100 feet west of the eastern border. We agree with the Trial Court's damage calculations and find them supportable by the record. We are of the opinion that defendants' "new" evidence was discoverable before trial, and would not alter the result reached here. Therefore, defendants' motion to remand this case must be denied, and the Trial Court's decision affirmed.

DUFFY, Justice (dissenting):

I admit to being troubled by the Court's disposition of this appeal and I therefore dissent from the ruling announced in the majority opinion.

The case involves a dispute between adjoining landowners who are litigating about where their common boundary is located. And that boundary is located by reference to a 1941 deed to certain of plaintiffs' predecessors in title. In part, the deed reads this way:

". . . Beginning at the Southwesterly intersection of . . '. two roads [Route 14 and the road to Selbyville] and running Southerly with the Westerly boundary line of the first mentioned road [Route 14] [to the Maryland line]."

The Superior Court heard testimony from three surveyors and decided the case by adopting the Carter survey, offered by plaintiffs, as showing the correct boundary based on the 1941 deed.

Obviously, where the "Westerly boundary line" of Route 14 was in 1941 is of critical importance. This Court was informed during oral argument that counsel and the Trial Court—i. e., all parties and the Judge who tried the case—all assumed that the Route 14 right of way in 1941 was *100* feet wide. Now we know from what appear to be undisputed facts placed before us, that the right of way was only *40* feet wide.[1]

1. The Trial Judge stated in his opinion that each of the three surveyors who testified,

". . . concluded, in effect, that the 1941 deed, which used the inarticulate phrase

Indeed, the majority opinion takes judicial notice of that fact based on 1931 proceedings in the Superior Court.

Given this state of affairs, it seems to me that justice requires a remand so that the Superior Court may consider the significance of what we now know about the width of the Route 14 right of way, but which the Superior Court did not know when it decided the case. The evidence, in my judgment, meets all of the tests approved by the Court in *State v. Watson*, Del.Supr., 5 Storey 285, 186 A.2d 543 (1961).

The majority opinion considers the probable effect of the new evidence on the original result (which, I agree, is a "most important requirement"), but its analysis is rooted in a self-contradiction: thus the Court finds that the parties intended to "[act] . . . without regard to the width of the right of way as shown by the record" but, at the same time, the Court determines that the 1941 deed runs "with the Westerly boundary line of the . . . road [Route 14]."

In my view, plaintiffs should not be given it both ways: either the deed on which they rely means what it says about running "with" the boundary of Route 14, or the parties to the deed intended something else. But the ruling by this Court permits plaintiffs to impeach the deed on which they rely and, at the same time, get the benefit of it.

I would grant the motion to remand so that the Superior Court may consider the offered documents and its own 1931 proceedings establishing a 40-foot wide right of way.[2] There must, of course, be an end to litigation but that is a rule designed to do justice, not to perpetuate a mistake.

'along the westerly boundary line of Route # 14,' *could and should* be read as if it used the phrase 'along the westerly right-of-way line of Route # 14'." (Emphasis added.) Defendant's surveyor later changed his mind but the two offered by plaintiffs, including Mr. Carter, did not.

2. I should also add that the complexity of the briefing submitted after oral argument indicates that the questions argued, particularly as to the intentions of the parties in 1941, are more appropriate for consideration in the first instance by the Trial Court rather than an Appeals Court.