655 F.2d 530
 M. B. M., INC., Appellee,
v.
Rupert A. GEORGE, Elenora George, Rupert George
Construction, Inc., and Bank of Nova Scotia.
Appeal of Rupert A. GEORGE, Elenora George, and Rupert
George Construction, Inc., Appellants.
 No. 80-2747.
 United States Court of Appeals,
Third Circuit.
 Argued April 28, 1981.
Decided Aug. 4, 1981.
 
 Ronald T. Mitchell (argued), Pallme & Mitchell, Charlotte Amalie, St. Thomas, V. I., for appellants.
 Frederick G. Watts (argued), Loud, Watts & Murnan, Charlotte Amalie, St. Thomas, V. I., for appellee.
 Before ADAMS, WEIS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The ownership of a right of way upon which defendants' structures encroach is at issue here. As grantees of abutting properties, defendants argue they obtained ownership to the center line of the right of way when plaintiff conveyed the lots to them. Plaintiff asserts that the intention was that it retain ownership of the right of way so as to facilitate its transfer to the government. The district court adopted the plaintiff's view and granted an injunction against the defendants. We agree that in this case the presumption in favor of a grant to the center of an adjoining roadway does not apply and affirm.
 
 
 2
 MBM, Inc. sought injunctive relief, alleging that a stone wall and the foundation of a building being constructed by the defendants encroached on its land. After a hearing, the district court ordered the defendants to remove part of the stone wall and to refrain from trespassing further on the plaintiff's property.
 
 
 3
 The plaintiff, MBM, had purchased all of parcel 6-Estate Contant on St. Thomas in 1965 and subdivided the tract into a number of lots. The defendants, Rupert A. George and his wife, Elenora M. George, purchased lot 6-35 in August and adjacent 6-13 in November of 1969. The deeds to both lots described the boundaries by metes and bounds between certain iron boundposts, some of which were described as "on edge of estate road right of way." In several places, the boundary was defined as running "along edge of estate road right of way."
 
 
 4
 A short time after the Georges bought the lots, Rupert George Construction, Inc. was hired to pave an 18 foot wide strip within the 30 foot right of way.[1] The Georges later constructed a stone wall near the section of paved surface closest to the southwest corner of lot 6-35. Part of this wall did not follow the Georges' property line, but was built on the unpaved section of the right of way.
 
 
 5
 In 1979, the Georges began building a house on lot 6-35 and applied to defendant Bank of Nova Scotia for a construction mortgage. A survey made at the bank's request revealed that the Georges' stone wall and part of the new construction was encroaching on the right of way. The bank refused to provide the financing unless the cloud on the title was removed.
 
 
 6
 Rupert George brought the problem to the attention of William Clarenbach, the president of MBM, who lived across the road. On behalf of MBM, Clarenbach agreed to convey enough of the right of way to the Georges so that the foundation of the new building would no longer encroach. In addition, Clarenbach and his wife agreed to convey part of their lot to MBM so that the 30 foot right of way would remain uniform. In exchange, Rupert George agreed to take down the encroaching wall.
 
 
 7
 MBM carried out its promise by conveying the necessary land, designated as lot 6-39, to the Georges by deed dated December 6, 1979. On January 3, 1980 the Georges gave a first mortgage on lots 6-35 and 6-39 to the Bank of Nova Scotia. A few days thereafter, Clarenbach demanded that George remove the portion of the wall as he had promised. Apparently alienated by the tone of the demand, George refused.
 
 
 8
 MBM then filed this action for injunctive relief and damages. The district court entered a temporary restraining order enjoining all construction in lot 6-39 and the right of way. The court also ordered a consolidated hearing on the request for a preliminary injunction and a trial on the merits.
 
 
 9
 At the hearing the defendants moved to dismiss, arguing that MBM was not a proper plaintiff because it did not retain any interest in the right of way after it conveyed the abutting property. The district court disagreed, holding that the description of lot 6-35 was unambiguous and, as was intended, did not include the right of way. MBM therefore was found to be a proper plaintiff. The court also rejected defendants' contentions that they had trespassed innocently and that they were being singled out for disparate treatment when other encroaching landowners were not sued. The court held that the defendants had intentionally reneged on their agreement and would be held to their bargain. An injunction issued requiring the Georges to remove the encroaching wall and prohibiting them from performing any other construction which would impinge on plaintiff's right of way.[2] Pending appeal, the district court stayed the portion of the order requiring removal of the wall.
 
 
 10
 On appeal, the defendants renew their challenge to plaintiff's standing, insisting that it does not own the ground included within the right of way. They rely upon the rule adopted by a majority of states that a grant of land bordering on a public highway generally extends to the middle of the road. Consistent with this principle, they argue, is 28 V.I.C. § 47 (Equity 1975 & 1980 Supp.), which reads in pertinent part:
 
 
 11
 "The following are the rules for construing the descriptive part of a conveyance of real property when the construction is doubtful and there are no other sufficient circumstances to determine it:
 
 
 12
 (4) when a road ... is the boundary, the rights of the grantor to the middle of the road ... are included in the conveyance, except where the road ... is held under another title."
 
 
 13
 The plaintiff argues, on the other hand, that this statute is inapplicable because the deed is unambiguous, describing as it does the property within stated metes and bounds. Necessarily, then, the argument runs, the plaintiff did not intend to convey any interest in the right of way, which lies beyond the described boundaries. Moreover, the plaintiff argues, even if the terms of the deed are doubtful, the common law rule for conveyances of land abutting public highways is inapposite because at the time 6-35 was conveyed there was no public road, but only an unpaved, private right of way.
 
 
 14
 At common law, ownership of land used as a highway belongs to the abutting landowner, subject to the public's right to use the road. 3 H. Tiffany, The Law of Real Property § 923, at 595-96 (3d ed. 1939). When a grantor owns part or all of the land subject to public use and then conveys property abutting the highway, it is generally presumed that he intended to convey his interest in the land to the center of the highway as well. See Annot., 49 A.L.R.2d 982 (1956).
 
 
 15
 This presumption rests upon several factors. It is considered unlikely that a grantor would want to retain title to the fee of a narrow strip of land which would have little or no value to him but would be of significant worth to the grantee. As a matter of policy, too, it has been held that the retention of ownership in the grantor is disfavored because it tends to promote vexatious and fruitless litigation. du Pont v. American Life Insurance Co., 41 Del.Ch. 33, 36, 187 A.2d 421, 423 (1963) (Seitz, C.). Moreover, the difficulties in locating a grantor who long ago conveyed his interest in all the property except the land underlying a road are obvious. Finally, as a matter of construction, a measure from a monument is from its center and, when the reference is to a road, the middle is the beginning point. Saccone v. West End Trust Co., 224 Pa. 554, 561-62, 73 A. 971, 972 (1909).
 
 
 16
 Although there is substantial agreement on the rule to be applied in the case of public highways, there is less than unanimity when a private road forms a boundary. 4 H. Tiffany, The Law of Real Property, § 996, at 219 (3d ed. 1939). Even in those jurisdictions where the general rule is applied to private ways as well, it is recognized that the presumption is rebuttable and is used as an aid to discern the ultimate determinant, the intention of the parties. Brassard v. Flynn, 352 Mass. 185, 224 N.E.2d 221, 223 (1967). The construction of unambiguous terms of a deed is a matter of law but if there is uncertainty, all of the circumstances existing at the time of the execution of the instrument should be considered as aides in determining the apparent object of the parties. Stewart v. Chernicky, 439 Pa. 43, 49, 266 A.2d 259, 263 (1970). This rule has been adopted by statute in the Virgin Islands since "other ... circumstances" may determine the construction of the deed. 28 V.I.C. § 47.
 
 
 17
 There are significant differences in the facts at hand from those in the cases applying the general rule. First, the deeds here refer not to a road that is paved and used extensively by the public, but only to a "right of way" whose usage by others would not interfere as substantially with the rights of the servient owner. From what the record reveals, there was no existing paved road at the time the deeds were executed in 1969. Thus, the case for treating the right of way as the equivalent of an established public road is considerably lessened.
 
 
 18
 Furthermore, this case differs from those in which there is no reason to believe that the grantor meant to retain ownership of part of the property. Covenants recited in the Georges' deed to lot 6-13, the land which adjoins lot 6-35 and abuts the same right of way, for example, demonstrate MBM's continuing interest in the right of way. MBM agreed to pave the estate road and to make sewer and water lines available to the buyer. Included is an agreement that "(t)he (b)uyer and all subsequent owners shall maintain the roads upon which the property abuts in reasonably good condition on a use pro-rate expense basis, according to the subdivision residential parcels abutting on said roads, but such obligations to maintain the roads shall cease at such time, if any, as said roads shall be dedicated to the municipality."
 
 
 19
 At trial Clarenbach testified, "The thought was and the idea was and the promise was originally made to all of the people who bought lots in the subdivision that that road would naturally be dedicated to the government if and when the government (would) accept it." He also testified that there were stakes in the ground to indicate the line between lot 6-35 and the right of way when the Georges bought the lot. These circumstances surrounding the conveyances in 1969 indicate that MBM intended to retain its interest in the right of way running through the subdivision.
 
 
 20
 Another indicator of the parties' original intent is their conduct after delivery of the deed. Rohner v. Niemann, 380 A.2d 549 (Del.1977). Here, the actions of both parties were consistent with an understanding that MBM owned the right of way. After the bank told the Georges that the encroachment was an obstacle to financing, for example, the Georges did not assert ownership of the right of way, but instead went to MBM and offered to purchase the strip in question. This parcel, which was shaped to cure the encroachment, had been part of the right of way and the deed to the Georges identifies MBM as the grantor.
 
 
 21
 Relying on the validity of this conveyance, the Georges mortgaged 6-39, together with the larger lot, 6-35, as security for the construction loan. It was only after the Georges refused to remove the wall that they denied MBM owned the land within the right of way. Before that time, the conduct of both parties was consistent with retention of title by MBM for the purpose of turning the road over to the government as soon as that could be arranged.
 
 
 22
 The existence of these conditions is more than enough to support the trial court's determination that 28 V.I.C. § 47(4) was not applicable. There were, in the words of the first clause of the statute, "sufficient circumstances to determine" proper construction of the conveyance. We need not resort, therefore, to the general rules of construction contained in the statute.
 
 
 23
 We do not quarrel with the defendants' assertion of the rule to be applied in cases where property abuts a public highway. The presumption of transfer of the grantor's interest to the center of the road is, in most instances, a valid one. The case at hand, however, falls in another category since extrinsic circumstances clarify the grantor's intent and support the district court's conclusion that ownership of the land underlying the right of way remained in MBM.
 
 
 24
 Once the issue of ownership is resolved, there is little remaining to the case. There was ample evidence to support the trial court's decree. The Georges had committed themselves to removing a portion of the wall in return for a conveyance of lot 6-39. That condition was fully complied with by the plaintiff and it was entitled to the agreed consideration. Furthermore, as a landowner, MBM could seek to enjoin the encroachment of the defendants' foundation on its property. Absent the question of ownership, the defendants do not contend that an injunction was improper under the circumstances, and we therefore do not belabor the point.
 
 
 25
 The judgment of the district court will be affirmed. The mandate will issue forthwith.
 
 
 
 [1]
 Plaintiff had promised purchasers of the lots that it would pave the road. It appears that payment for the work was actually made by St. Thomas Gardens, Inc., an abutting land-owner. The record does not clearly develop the point, but it may be that the principal stockholder in MBM also controls St. Thomas Gardens, Inc
 
 
 [2]
 The district court has not yet ruled on the plaintiff's request for damages or the defendants' counterclaim against MBM and St. Thomas Gardens, Inc. for other encroachments. The injunction, however, is appealable. 28 U.S.C. § 1292(a)(1) (1976)